Thomas H. BARLAND, Paul J. Lenz, Gregory Peterson, Benjamin Proctor, and Eric Wahl, Circuit Court Judges for Eau Claire County, Plaintiffs-Respondents,

v.

EAU CLAIRE COUNTY, Defendant-Co-Appellant,

AFSCME LOCAL 2223, Defendant-Appellant.

Supreme Court

*No. 96–1607. Oral argument September 4, 1997.—Decided March 13, 1998.*

(Also reported in 575 N.W.2d 691.)

For the defendant-appellant there were briefs (in the Court of Appeals) by *Bruce F. Ehlke* and *Shneidman, Myers, Dowling, Blumenfield, Ehlke, Hawks and Domer*, Madison and oral argument by *Bruce F. Ehlke*.

For the defendant-co-appellant there were briefs (in the Court of Appeals) and oral argument by *Keith R. Zehms*, Corporation Counsel, Eau Claire.

For the plaintiffs-respondents the cause was argued by *David C. Rice*, assistant attorney general, with whom on the brief (in the Court of Appeals) was *James E. Doyle*, attorney general.

Amicus curiae brief (in the Court of Appeals) was filed by *Thomas G. Cannon* and *O'Neil, Cannon & Hollman, S.C.*, Milwaukee for the Wisconsin Trial Judges Association, Inc.

Amicus curiae brief (in the Supreme Court) was filed by *Robert Horowitz* and *Stafford, Rosenbaum, Rieser & Hansen*, Madison for the Wisconsin Counties Assocation.

¶ 1. JON P. WILCOX, J. This case is not about powers that are explicitly set forth or described in our constitution, or even mentioned in our statutes. Rather, it is about powers that "[f]rom time immemorial. . .have been conceded to courts because they are courts. Such powers have been conceded because without them they could neither maintain their dignity, transact their business, nor accomplish the purposes of their existence. These powers are called inherent powers." *State v. Cannon*, 196 Wis. 534, 536, 221 N.W. 603 (1928). Inherent powers allow the judiciary to maintain their status as a separate and co-equal branch of government.

¶ 2. Indeed, the inherent powers of the courts have been referred to as the "sword and shield of the judiciary." Felix F. Stumpf, *Inherent Powers of the Courts: Sword and Shield of the Judiciary*, National Judicial College (1994). Using these tools to protect its constitutional independence as a third branch of government, the judiciary should be able to shield against intrusions into its domain of exclusive judicial authority, while using its sword to cut away the constitutionally defective portions of a legislative enactment. Today we must determine whether circuit court judges have the exclusive, inherent constitutional authority to prevent the unilateral removal of their judicial assistants by way of a collective bargaining agreement between county government and its employees. We hold that they do.

¶ 3. This case is before the court on certification by the court of appeals, pursuant to Wis. Stat. § 809.61 (1995–96).[1] The circuit court granted the plaintiff judges' (the judges) motion for summary judgment and

[1] All future references to Wis. Stats. will be to the 1995–96 version of the statutes unless otherwise indicated.

declared that a circuit court has the exclusive, inherent authority to appoint and remove its judicial assistant regardless of the provisions of a collective bargaining agreement negotiated between the county and its employees under the Municipal Employment Relations Act (MERA), Wis. Stat. §§ 111.70–111.77. Defendants Eau Claire County (the County) and AFSCME Local 2223 (AFSCME) appealed from the circuit court's decision and order.

¶ 4. On certification, we consider whether a circuit court judge has the exclusive, inherent authority to appoint and remove his or her judicial assistant, regardless of the provisions of a collective bargaining agreement. As stated, we hold that a circuit court judge has the exclusive, inherent constitutional authority to prevent the unilateral removal of his or her judicial assistant despite the terms of a collective bargaining agreement. However, we do not address a circuit court judge's power to appoint that assistant.[2] Therefore, we affirm the order of the circuit court granting the judges' motion for summary judgment on the basis that circuit court judges have the exclusive, inherent authority to remove their judicial assistants.[3]

---

[2] At its core, this decision requires us to determine whether circuit court judges can prevent the removal of their judicial assistants. The power to appoint an assistant after one has been removed is a secondary consideration, and one that is not necessarily triggered by the facts of this case. Because we typically decide cases on the narrowest possible grounds, *see State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989), this decision solely encompasses a circuit court judge's power to remove his or her judicial assistant.

[3] Following oral argument in this case, AFSCME filed a motion with this court seeking leave to file a "Supplemental Statement in Followup to Oral Argument." That motion is

## I.

¶ 5. Five Eau Claire County circuit court judges filed a declaratory judgment action pursuant to Wis. Stat. § 806.04[4] requesting the court to declare that a circuit court has the exclusive, inherent authority to appoint and remove its judicial assistants, and that such authority cannot be modified by a collective bargaining agreement.

¶ 6. The circuit court made certain findings of fact based upon the parties' pleadings, briefs, and oral arguments, including the following. The County is a municipal employer within the meaning of MERA. AFSCME is the exclusive collective bargaining representative for the Eau Claire County courthouse clerical employees bargaining unit. AFSCME and the County were parties to a collective bargaining agreement ("the agreement") in force for the period of January 1, 1994, through December 31, 1995. Collective bargaining agreements covering courthouse employees have been

---

hereby denied. Briefs and papers in addition to those discussed in Wis. Stat. § 809.19 are accepted by this court under very limited circumstances; such action is typically allowed only when the court has requested additional briefing on a particular issue. Accordingly, we do not consider, nor does this opinion address, any of the additional arguments that are set forth in that statement.

[4] **Wis. Stat. § 806.04 Uniform declaratory judgments act. (1)** SCOPE. Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. . . .

(2) POWER TO CONSTRUE, ETC. Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute. . .may have determined any question of construction or validity arising under the instrument, statute. . .and obtain a declaration of rights, status or other legal relations thereunder. . . .

in effect in Eau Claire County since 1972. *See County of Eau Claire v. AFSCME Local 2223*, 190 Wis. 2d 298, 301, 526 N.W.2d 802 (Ct. App. 1994).

¶ 7. Section 4.02 of the agreement provides that in the event of a layoff, an affected employee has the right to invoke his or her seniority and move or "bump" into a position held by an employee with less seniority within the same bargaining unit, provided that the bumping employee possesses the "necessary qualifications" for that position.

¶ 8. In Eau Claire County, judicial assistant or legal secretary[5] vacancies have always been posted pursuant to the terms of the agreement, and filled through a posting procedure.[6] The last time that a judicial assistant position in the county was filled by posting was on July 13, 1981—14 years before the layoff here.

¶ 9. There are five judicial assistant positions within the courthouse clerical employees' bargaining unit. Three of those five positions provide clerical assistance to the circuit court. Ms. Shanan Melland serves

---

[5] The Eau Claire County collective bargaining agreement uses the term "legal secretary." At oral argument, counsel referred to that position as a "judicial assistant." We take the term "judicial assistant" as described in SCR 70.39(11)(a) (1996) to be synonymous with "legal secretary" and use the term "judicial assistant" throughout this opinion except in direct reference to the terms of this collective bargaining agreement.

[6] At oral argument, counsel for the county stated that if no qualified person applied for the posted position, the county would then use standard recruitment policies to fill the position. In that event, the appointing person, such as the judge, would indicate how many outside applicants he or she wanted to consider. There is no evidence that judges are involved in the appointment process when the normal posting procedure is successful.

as the judicial assistant to Eau Claire County Circuit Court Judge Paul J. Lenz and to the family court commissioner/court commissioner. Although the three judicial assistants for the five Eau Claire County circuit judges have specific responsibilities, they will, if the need arises, assist one another in their assignments.

¶ 10. The circuit court also made findings describing the procedural history of this action. On November 15, 1995, the County Board of Supervisors for Eau Claire County adopted Ordinance No. 95–96/237 which abolished certain positions effective January 1, 1996. Ms. Penny Walske, a member of the courthouse clerical bargaining unit, held a position that would be affected by the new ordinance. On November 30, 1995, Ms. Walske, a more senior employee, elected to bump Ms. Melland from her position as judicial assistant to Judge Lenz. The circuit court found that Ms. Walske meets or exceeds all the judicial assistant job qualifications required by the agreement.[7]

¶ 11. The five Eau Claire County circuit court judges expressed their objection to the bumping of Ms. Melland to the County Board Committee on Personnel. The judges claimed to have exclusive authority to

---

[7] Specifically, the circuit court found that Ms. Walske, whose position in the Register of Deeds Office had been eliminated by Ordinance No. 95–96/237, possesses a high school diploma plus an Associate Degree, has over six years secretarial experience in a general office, with four of those years working as a legal secretary for two different private law offices. Ms. Walske also has experience and training in typing, personal computer use with word processing software, basic bookkeeping and standard office practices and procedures, plus a demonstrated ability to maintain confidentiality.

appoint and remove their judicial assistants, under the doctrines of inherent judicial authority and separation of powers. Despite these arguments, the Committee on Personnel rejected the judges' arguments. Ms. Melland was notified by both the County and AFSCME that if she did not abandon her position as judicial assistant to Judge Lenz and report for work in the Office of the Clerk of Courts, she might be disciplined for insubordination. Further, a failure to comply meant that Ms. Melland would not be paid by the County after December 31, 1995.

¶ 12. On December 28, 1995, the judges filed a complaint seeking a declaration that they have the exclusive authority to appoint and remove their judicial assistants, and that such authority may not be modified by a collective bargaining agreement. The judges also requested an order enjoining the County from bumping Ms. Melland and from refusing to pay her. On December 29, 1995, the circuit court heard arguments of the parties and issued a temporary injunction to enjoin the County and AFSCME from removing Ms. Melland from her position as judicial assistant to Judge Lenz. Then, on March 18, 1996, the judges filed a motion for summary judgment seeking declaratory relief and a permanent order to enjoin the County and AFSCME from bumping Ms. Melland.

¶ 13. On May 1, 1996, the court entered a declaratory judgment that circuit court judges have the exclusive authority to appoint and remove their judicial assistants under the doctrines of inherent judicial authority and separation of powers. The court held that such authority may not be modified by a collective bargaining agreement negotiated between the County and AFSCME under MERA. Even if there were joint authority to appoint and remove, the circuit court con-

cluded that the deliberate removal of a trained, trusted, and compatible employee would significantly impair the efficiency of the court and would irreparably harm the circuit judges as well as the public.

¶ 14. Having reached these conclusions, the circuit court permanently enjoined the County and AFSCME from removing Ms. Melland from her position as judicial assistant to Judge Lenz, from refusing to pay her, and from disciplining her for remaining in her judicial assistant position. Thereafter, the County and AFSCME timely appealed from the decision and order of the circuit court. We granted the court of appeals' request for certification.

## II.

¶ 15. In this declaratory judgment action, we must decide whether the County's unilateral act to remove a judicial staff member, albeit pursuant to the terms of a collective bargaining agreement, intrudes upon the exclusive, inherent constitutional authority of the circuit court. This is a question of first impression in the state of Wisconsin.

■■■

¶ 16. A court's power to declare rights is broad. *See Loy v. Bunderson*, 107 Wis. 2d 400, 407, 320 N.W.2d 175 (1982). A circuit court has discretion to grant or deny declaratory relief, but only when there is a justiciable case or controversy. *See id.* at 409–10. To sustain a discretionary act, we must conclude that the circuit court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *See id.* at 414–15. Most importantly in this case, we must determine whether the circuit court applied the proper standard of law in

granting the judges' request for declaratory relief. Whether an act by the legislative branch of government violates the separation of powers doctrine by infringing upon the inherent constitutional authority of the judicial branch of government is a question of law that we review independently of the lower courts. *See State v. Holmes*, 106 Wis. 2d 31, 41 n.7, 315 N.W.2d 703 (1982).

## III.

¶ 17. The County and AFSCME contend that the legislature has constitutionally delegated power to the County to enter into a collective bargaining agreement, and that the circuit court is not constitutionally empowered to avoid the effect of the agreement's "bumping" provision. The judges, on the other hand, contend that the bumping provision is void as applied to judicial assistants, since the judges' power to appoint and remove such assistants is an exclusive one. To address these conflicting claims, it will be helpful to set forth some general principles regarding the separation of powers.

## A.

¶ 18. "The doctrine of separation of powers, while not explicitly set forth in the Wisconsin constitution, is implicit in the division of governmental powers among the judicial, legislative and executive branches." *State ex rel. Friedrich v. Circuit Court for Dane County*, 192 Wis. 2d 1, 13, 531 N.W.2d 32 (1995) (citation omitted). "The Wisconsin constitution creates three separate coordinate branches of government, no branch subordinate to the other, no branch to arrogate to itself control over the other except as is provided by the con-

stitution, and no branch to exercise the power committed by the constitution to another." *Holmes*, 106 Wis. 2d at 42.

■

¶ 19. In attempting to delineate the powers of our tripartite government, we need not seek a "strict, complete, absolute, scientific division of functions between the three branches of government. The separation of powers doctrine states the principle of shared, rather than completely separated powers. The doctrine envisions a government of separate branches sharing certain powers." *Id.* at 43 (citations omitted). "In these areas of 'shared power,' one branch of government may exercise power conferred on another only to an extent that does not unduly burden or substantially interfere with the other branch's exercise of its power." *In re Complaint Against Grady*, 118 Wis. 2d 762, 775, 348 N.W.2d 559 (1984).

■

¶ 20. The majority of governmental powers lie within these "great borderlands" of shared authority, *In re Appointment of Revisor*, 141 Wis. 592, 597, 124 N.W. 670 (1910), where it is "neither possible nor practical to categorize governmental action as exclusively legislative, executive or judicial." *Friedrich*, 192 Wis. 2d at 14 (citation omitted). Nevertheless, "[e]ach branch has a core zone of exclusive authority into which the other branches may not intrude." *Id.* at 13–14 (citation omitted). Although finite and restricted in size, these core zones of authority are to be "jealously guarded" by each branch of government. *Id.* at 14. Therefore, as to these areas of power, we do not employ the undue burden or substantial interference test because "*any* exercise of authority by another branch of

government is unconstitutional." *In re Grady*, 118 Wis. 2d at 776 (citation omitted) (emphasis in original).[8]

¶ 21. With regard to areas of exclusive judicial authority, we have stated:

> For more than a century, this court has been called upon to resist attempts by other branches of government to exercise authority in an exclusively judicial area. These have included an attempt to remove and replace a court employe, *In re Janitor*, 35 Wis. 410 (1874); an attempt to dictate the physical facilities in which a court was to exercise its judicial functions, *In re Court Room*, 148 Wis. 109 (1912); an attempt to legislate what constitutes the legal sufficiency of evidence, *Thoe v. Chicago M. & St. P.R. Co.*, 181 Wis. 456 (1923); an attempt to regulate trials in the conduct of court business, *Rules of Court Case*, 204 Wis. 501 (1931); bar admission and regulation of attorneys, *In re Cannon*, 206 Wis. 374 (1932), *Integration of Bar Cases*, 244 Wis. 8 (1943), 249 Wis. 523 (1946), 273 Wis. 281 (1956). In each of these cases we recognized areas of authority exclusive to the judicial branch and, therefore, free from intrusion by another branch of government.

*Id.* at 778 (holding that the setting and enforcement of time periods for judges to decide cases falls within an area of exclusive judicial authority).

---

[8] We note that " '[i]f a statute falls within the judiciary's core zone of exclusive authority, the court may abide by the statute if it furthers the administration of justice, 'as a matter of comity or courtesy rather than as an acknowledgment of power.' ' Compliance, however, is at the discretion of the judiciary and cannot be mandated." *Joni B. v. State*, 202 Wis. 2d 1, 8 n.5, 549 N.W.2d 411 (1996) (citation omitted).

¶ 22. To determine whether a legislative enactment unconstitutionally infringes upon judicial power, the court must consider first whether the subject matter of the legislation falls within the power that is constitutionally granted to the legislature. *See Friedrich*, 192 Wis. 2d at 14. If it does, the court must then inquire whether the subject matter of the legislation also falls within the judiciary's constitutional grant of power. *See id.* at 14–15.

### B.

¶ 23. We examine first the extent of the legislature's constitutional authority in the employment of judicial staff members. The state constitution provides that "[t]he legislature may confer upon the boards of supervisors of the several counties of the state such powers of a local, legislative and administrative character as they shall from time to time prescribe." Wis. Const. art. IV, § 22. Pursuant to that constitutional grant of power, the legislature has delegated certain statutory powers to each county, including the power to "make such contracts and to do such other acts as are necessary and proper to the exercise of the powers and privileges granted and the performance of the legal duties charged upon it." Wis. Stat. § 59.01. The legislature has also delegated to county boards of supervisors the power to "establish regulations of employment for any person paid from the county treasury." Wis. Stat. § 59.22(2)(c).[9] Finally, municipal employers must bargain collectively with public employees regarding

[9] Wis. Stat. § 59.22(2)(c) was formerly designated as Wis. Stat. § 59.15(2)(c). 1995 Wis. Act 201 renumbered all sections of Chapter 59. The briefs of AFSCME and the County use the 1993–94 statutory designations.

wages, hours and other terms of employment.[10] *See* Wis. Stat. §§ 111.01(3), 111.04, 111.70(1)(a), 111.70(1)(j).

¶ 24. These statutory provisions set out the broad authority of the County, as delegated by the legislature, to regulate employment of county employees, including court staff. Moreover, the subject matter of the agreement seems to fall well within the boundaries of this authority: it covers compensation, holidays,

---

[10] In its brief, the County objects to the circuit court's characterization of judicial assistants as "confidential" employees, because Wis. Stat. § 111.70(1)(i) excludes confidential employees from the definition (and protected status) of a municipal employee. The County asserts that the Wisconsin Employment Relations Commission (WERC) requires that for an employee to be considered confidential, he or she must have access to, knowledge of, or participate in confidential matters relating to labor relations. Further, for information to be confidential, it must deal with the employer's strategy or position in collective bargaining, contract administration, litigation or other similar matters pertaining to labor relations and grievance handling between the bargaining representative and the employer, and be information which is not available to the bargaining representative or its agents. *See* County's brief at 9. The judges contend that the circuit court's use of this term is not meant to fit the WERC definition of confidential employees, but is a common sense recognition of the fact that a circuit court judge entrusts his or her judicial assistants with confidential information. *See* judges' brief at 15–16 n.2.

We likewise do not read the circuit court's "confidential" characterization of judicial assistants to mean that those staff persons have, for example, access to the employer's strategy in collective bargaining or grievance handling. The circuit court judges are not parties to the collective bargaining agreement. Instead, we read the circuit court's use of the term "confidential" to refer to knowledge of the substantive business of the courts, and not to a knowledge of labor relations strategies.

vacation, pregnancy leave, and various types of insurance.

## C.

¶ 25. At the same time, it is clear that circuit courts also have constitutional authority over matters of staff and judicial administration. The legislature has delegated some powers of appointment to the circuit court, such as the power to appoint court reporters for each branch of court. *See* Wis. Stat. § 751.02. Other delegated appointment powers include Wis. Stat. § 48.04, appointment of a clerk of court for juvenile matters, Wis. Stat. § 48.065, appointment of juvenile court commissioners, and Wis. Stat. § 851.71, power to appoint and remove a register in probate. *See also*, Wis. Stat. § 32.08(2) (power to appoint county condemnation officers); Wis. Stat. § 17.13(3) (power to remove local government officers). Both the County and AFSCME point out that Wis. Stat. § 751.02 also authorizes each supreme court justice and court of appeals judge to appoint and prescribe the duties of a secretary and a law clerk. There is, however, no similar statutory authority for a circuit court judge to appoint a secretary.

¶ 26. However, we do not take the County and AFSCME to seriously contend that courts can only have authority over matters of staff and judicial administration by virtue of legislative delegation. Examples of non-delegated authority over such matters have been recognized in numerous appellate decisions.[11] Circuit court authority in matters of staff

---

[11] *See, e.g., Rupert v. Home Mut. Ins. Co.*, 138 Wis. 2d 1, 7, 405 N.W.2d 661 (Ct. App. 1987) (concluding circuit court has

and judicial administration emanates not from an express grant of constitutional power, but is an inherent authority derived from the powers granted in sec. 2, Art. VII of the Wisconsin Constitution.[12] Inherent, implied, or incidental powers are those which must necessarily be invoked to enable the courts to accomplish their constitutionally or legislatively mandated functions. *See Friedrich*, 192 Wis. 2d at 16.[13] The outer limits of that authority are not fully delineated in the constitution, nor in our case law. *See E.B. v. State*, 111 Wis. 2d 175, 181, 330 N.W.2d 584 (1983).

---

inherent power to control its docket to achieve economy of time and effort); *Neylan v. Vorwald*, 124 Wis. 2d 85, 94, 368 N.W.2d 648 (1985) (recognizing that court has inherent power to control the judicial business before it).

[12] Wis. Const. art. VII provides:

> **Court system.** Section 2. The judicial power of this state shall be vested in a unified court system consisting of one supreme court, a court of appeals, a circuit court, such trial courts of general uniform statewide jurisdiction as the legislature may create by law, and a municipal court if authorized by the legislature under section 14.

[13] We recognize that there are subtle differences between inherent and implied powers. *See generally*, Felix F. Stumpf, *Inherent Powers of the Courts: Sword and Shield of the Judiciary*, National Judicial College (1994). However, we reject any mechanical distinction drawn between the two concepts:

> There is a distinction between the two terms. . . .[I]nherent powers refer to the exercise of powers that are reasonably necessary for the conduct of a court's constitutional functions and that grow out of the court's jurisdiction. Implied powers are those that arise out of and are necessary to carry out the authority expressly granted and contemplated either constitutionally or legislatively.

*Id.* at 5 (citation omitted). We have little trouble concluding that most inherent powers, just as implied powers, ultimately find their roots in constitutional provisions such as art. VII, § 2.

¶ 27. We need not comprehensively catalog the powers granted to the courts. For purposes of this case, we need only determine whether the inherent power of the circuit court includes the power to prevent enforcement of the bumping provision against judicial assistants to circuit court judges.

¶ 28. Inherent powers include those powers which are "essential to the expedition and proper conducting of judicial business." *In re Janitor of the Supreme Court*, 35 Wis. 410, 419 (1874). We have also stated:

> The authorities, in so far as any can be found on the subject, are to the effect that a constitutional court of general jurisdiction has inherent power to protect itself against any action that would unreasonably curtail its powers or materially impair its efficiency. A county board has no power to even attempt to impede the functions of such a court, and no such power could be conferred upon it.

*In re Court Room*, 148 Wis. 109, 121, 134 N.W. 490 (1912). Later, in *Latham v. Casey & King Corp.*, 23 Wis. 2d 311, 314, 127 N.W.2d 225 (1964), this court further stated:

> The general control of the judicial business before [the court] is essential to the court if it is to function. 'Every court has inherent power, exercisable in its sound discretion, consistent within the Constitution and statutes, to control disposition of causes on its docket with economy of time and effort.' 14 Am.Jur., Courts, p. 371, sec. 171, Inherent Powers of Courts, 1963 Suppl., p. 77.

¶ 29. AFSCME asserts that constitutionally-grounded inherent powers are "need specific" only, and

not a prerogative that may be exercised at will. According to the County, the circuit court's need remains filled if Ms. Melland is replaced by a qualified member of the bargaining unit. This instance of employee substitution is in contrast to the need for a new circuit court staff position, or the need to provide the circuit court judges with additional facilities, equipment or services.[14] Because this is not a case of judicial need, the County contends that the judges cannot invoke their inherent authority to avoid the terms of the collective bargaining agreement.

¶ 30. We disagree with the appellants' arguments. We recognize the distinction between this case and cases involving the need for additional facilities or additional staff, but we reject the implication that a court's inherent powers may be asserted only under such circumstances. The courts of this state may call upon their inherent powers when needed to protect

---

[14] *See, e.g., State ex rel. Moran v. Dep't of Admin.*, 103 Wis. 2d 311, 307 N.W.2d 658 (1981) (expenditure of funds for automated legal research system would be a proper exercise of inherent powers); *State ex rel. Reynolds v. County Court of Kenosha County*, 11 Wis. 2d 560, 105 N.W.2d 876 (1960) (court can order installation of air conditioning if necessary); *In re Court Room*, 148 Wis. 109, 134 N.W. 490 (1912) (upholding judge's refusal to accept leased space outside courthouse which failed to include a jury room).

The circuit court below recognized that there are several functional areas to which inherent powers apply. Decision and Order at 4. One of those areas is logistical support, which the circuit court described as the ordering of additional personnel, mandating the construction of court facilities, the procurement of services, the acquisition of equipment, or the setting of salaries. *Id.* For an overview of cases and commentary discussing logistical support, see Felix F. Stumpf, *Inherent Powers of the Court*, 47 et seq., National Judicial College (1994).

themselves against actions that would "unreasonably curtail [their] powers or materially impair [their] efficiency" in expediting and conducting their judicial business. *In re Court Room*, 148 Wis. at 121. Therefore, we disagree with the County's suggestion that the circuit court's "need" has necessarily been fulfilled when the judicial assistant who "bumps" the incumbent is a qualified member of the bargaining unit.

¶ 31. In fact, when another branch unilaterally removes and replaces an already trained and qualified court employee, the court is forced not only to lose the efficiencies developed by the incumbent employee, but to spend valuable judicial time training and orienting the replacement employee. A positive, productive working relationship is not established overnight. The training time spent by the court on the replacement staff member could be given to other pressing judicial responsibilities.

¶ 32. AFSCME also argues that the exercise of inherent authority is limited to those instances where a circuit court judge acts in a judicial capacity. According to AFSCME, when a circuit court judge makes an appointment decision, it exercises administrative, not judicial, powers.

¶ 33. The authorities cited by AFSCME for this proposition are not persuasive. In none of those cases[15] did the courts discuss the distinctions between inher-

---

[15] AFSCME cites *State ex rel. Drake v. Doyle*, 40 Wis. 175, 188 (1876) and *State ex rel. Ellis v. Thorne*, 112 Wis. 81, 87–88 (1901) for its judicial/administrative distinction argument. The focus in *Ellis* was on whether persons other than judges could exercise certain judicial power. *Drake* addressed whether the secretary of state, empowered by statute to revoke certain licenses, unconstitutionally performed a judicial act when revoking such licenses.

ent constitutional powers of the judiciary and the legislature's constitutional authority to delegate employment decisions to counties. Other cases upon which AFSCME relies are also distinguishable, because they assess whether certain employment decisions by judges were sufficiently "judicial" to qualify for immunity from prosecution.[16]

¶ 34. AFSCME's request that we distinguish between "judicial" power and "administrative" authority in order to identify a court's inherent power misses the point. Contrary to AFSCME's assertion, a court's inherent powers are not limited to deciding outcomes in particular cases. "Judicial power extends beyond the power to adjudicate a particular controversy and encompasses the power to regulate matters related to adjudication." *Holmes*, 106 Wis. 2d at 44.

¶ 35. The constitutional obligation to administer justice includes addressing court administration issues which frequently arise "off the bench." Judicial employees can and often do play an extremely important role in the discharge of a court's constitutional duty to deliver justice to the citizens of the state.

¶ 36. Our appellate courts have long recognized the inherent constitutional responsibility of the circuit courts to employ efficient and effective off-the-bench judicial management techniques. The delivery of justice requires much more than presiding over cases and announcing decisions. Judges and their staff also serve as courtroom and calendar administrators, performing

---

[16] *See, e.g., Kurowski v. Krajewski*, 848 F.2d 767 (7th Cir.), *cert. denied*, 488 U.S. 926 (1988), *Rosenbarger v. Shipman*, 857 F. Supp. 1282 (N.D. Ind. 1994), *Forrester v. White*, 484 U.S. 219 (1988), and *Guercio v. Brody*, 814 F.2d 1115 (6th Cir. 1987).

a myriad of tasks all designed to carry out constitutionally required responsibilities. A circuit court necessarily has inherent power, derived from the constitution, to protect itself and to control the judicial business before it, business that includes "administrative" tasks. *See Jacobson v. Avestruz*, 81 Wis. 2d 240, 245, 260 N.W.2d 267 (1977). *See also, Lentz v. Young*, 195 Wis. 2d 457, 536 N.W.2d 451 (Ct. App. 1995).

¶ 37. We draw support for this conclusion from a number of examples of the exercise of a circuit court's inherent power in non-adjudicative matters. In *Stevenson v. Milwaukee County*, 140 Wis. 14, 19, 121 N.W. 654 (1909), for example, we held that a circuit court has inherent power to appoint its own bailiff, notwithstanding a statute restricting appointment to candidates selected by the sheriff. Another example is our conclusion in *State ex rel. Reynolds v. County Court of Kenosha County*, 11 Wis. 2d 560, 105 N.W.2d 876 (1960), that the court's need to function efficiently included the inherent power to order installation of an air conditioner.

¶ 38. In sum, we are satisfied that courts have inherent constitutional authority to perform their administrative responsibilities. As a result, the subject matter of the agreement also falls within the judiciary's constitutionally-based sphere of inherent powers to "protect itself against any action that would unreasonably curtail its powers or materially impair its efficiency," *In re Court Room*, 148 Wis. at 121, and to exercise those powers which are "essential to the expedition and proper conducting of judicial business," *In re Janitor*, 35 Wis. at 419.

## IV.

¶ 39. However, that both the legislative and judicial branches exercise power in the realm of staff and judicial administration does not necessarily lead to the conclusion that the two branches share this power. *See Friedrich*, 192 Wis. 2d at 20. For example, the bumping provision of the agreement might fall within the legislature's general power to delegate employment decisions to county boards, but might also intrude impermissibly on the judiciary's core zone of exclusive power. We are somewhat more persuaded by AFSCME's argument that the power to remove a judicial assistant is shared with the legislative branch, and not exclusive to the judiciary, via the County's specific, constitutionally-based power to establish regulations of employment for persons paid from the county treasury. *See* Wis. Stat. § 59.22(2)(c). However, examining such general powers of the legislature provides imprecise guidance in this case.

¶ 40. We reach this conclusion because in our assessment, the "bumping" or removal of a judicial assistant is a power wholly distinct from the power to "establish regulations of employment." In establishing certain regulations of employment, the agreement sets forth guidelines on working conditions such as leaves of absence (*see* § 6.07 of the agreement), pregnancy leave (*see* § 6.12), vacation (*see* § 7.09), sick leave (*see* § 7.10), health, life and dental insurance (*see* §§ 7.05-.07) and worker's compensation or injury leave (*see* § 7.11). These provisions *regulate* the employment of county personnel, but do not *control* or *commandeer* it as the bumping provision of the agreement does. We are satisfied that the bumping provision takes a step down a heretofore unexplored path in collective bargaining

negotiations relating to judicial staff, and in doing so, crosses the threshold of the judiciary's private abode.[17]

¶ 41. The distinction between establishing regulations of employment and making the ultimate decision to retain an employee once hired is made clear by several authorities. The American Bar Association has promulgated certain standards for courts in the area of court organization. *See* ABA Standards Relating to Court Organization § 1.42.5(a), *Collective Bargaining for Nonjudicial Personnel* (1990). These standards indicate that "[t]he scope of collective bargaining should be limited to those matters concerning compensation, working conditions, and related subjects permitted by state law applying to public employees, including those in the judicial branch." *Id.* A study done by the American University Criminal Courts Technical Assistance Project similarly indicates that "[u]nions bargain for strength on wages, hours and terms and conditions of employment. The courts retain management's right to hire, administer, discipline, and remove their employees." Harry O. Lawson, et al., *Personnel Administration in the Courts* 141 (1978). *See also Stumpf, Inherent Powers of the Courts* at 54–55 and cases cited therein ("Generally, the line that has been drawn in collective bargaining litigation is whether the judiciary when not designated as the managerial representative has retained control of selecting, supervising, and discharging court personnel.").

¶ 42. Therefore, we conclude that the unilateral removal of a circuit court judge's judicial assistant without permission from the judge is not synonymous

[17] In fact, counsel for the County conceded at oral argument that this was the first time that a judicial assistant had been bumped under a collective bargaining agreement.

with, or even a logical extension of, "establish[ing] regulations of employment." Thus, while we agree that the legislature has constitutionally-based authority to regulate the conditions of county employment, this fact does not aid in our analysis of whether it has ever shared the power to remove a judicial assistant without the circuit court judge's permission. Therefore, we look to the historical practices and laws of this state to determine whether the power to remove a judicial assistant is shared with the legislature or exclusive to the judiciary. *See Friedrich*, 192 Wis. 2d at 20.

¶ 43. The legislative powers to control and regulate county personnel have significant history in the state of Wisconsin. Since 1945, Wisconsin counties have had the ability to establish "rules and regulations" of county employment. Wis. Stat. § 59.15(2)(c) (1945) provided:

> The county board. . .may provide, fix or change the salary or compensation of any. . .employe. . .and also establish the number of employes in any department or office. . .and may establish rules and regulations of employment for any or all persons paid from the county treasury. . . .

¶ 44. Prior to that date, statute provided that the board could "at any time fix or change the number of deputies, clerks and assistants *that may be appointed by any county officer*, and fix or change the annual salary of each such appointee." Wis. Stat. § 694(4)(b) (1915) (emphasis added). The phrase "county officer" was defined and clarified in 1929 to include "any elective officer whose salary or compensation is paid in whole or in part out of the county treasury. . . ." *See* 1929 Wis. Laws Ch. 362. This definition would have included both county and circuit judges prior to the

court reorganization of 1978, since they were typically paid, at least in part, out of the county treasury.[18]

¶ 45. By engaging in the historical analysis employed by *Freidrich*, it becomes clear that there is no evidence that the legislature has ever held the power to unilaterally remove a judicial assistant without the judge's authority. To the contrary, the history of the statutes upon which the County and AFSCME rely suggests that the legislature has historically had only the limited power to set the number and salaries of assistants, along with other secondary powers to regulate employment. The power to remove such assistants appeared to rest in the hands of the judge alone, so that once again, the legislature could *regulate* employment, but not *control* the employment decision altogether.[19]

¶ 46. This analysis is similar to that we employed in *State ex rel. Fiedler v. Wisconsin Senate*, 155 Wis. 2d 94, 99, 454 N.W.2d 770 (1990), where this court concluded that a legislative enactment imposing a continuing legal education requirement on attorneys prior to their appointment as guardians ad litem improperly intruded upon a regulation of the practice

[18] Although this statute is silent on the issue of removal, it does address the power of appointment, and "if the court or the justices possess the latter, it follows that they alone can exercise the former." *In re Janitor of the Supreme Court*, 35 Wis. 410, 417 (1874).

[19] We recognize that the agreement simultaneously protects a judicial assistant's public employment status, but also makes the employee susceptible to bumping. Therefore, we reference "control over the employment decision" only insofar as it relates to the judge's personal choice of retaining a particular individual as his or her judicial assistant; we do not suggest that a circuit court judge may subsequently terminate the assistant from public employment entirely.

of law that is exclusively within the province of the judiciary. *See id.* at 98. As a result of this intrusion, we held that the statute was void as an unconstitutional violation of the separation of powers doctrine. *See id.*

¶ 47. In *Fiedler,* we first concluded that the judiciary is concerned with the qualifications of attorneys in the exercise of its inherent power to regulate the bar. *See Fiedler,* 155 Wis. 2d at 101. We also noted that the legislature may prescribe minimum qualifications for persons desiring to be admitted to practice law in the state as an incident to its general power to protect the public. *See id.* at 102. "Once admitted, however, it does not follow that the legislature shares with the judiciary the authority to establish minimum qualifications in specific areas of law." *Id.*

¶ 48. Having determined that "[t]his court has never in the past authorized the legislature to adopt rules or enact legislation attempting to establish a threshold level of competency to practice in a particular area," we concluded that "once an attorney has been determined to have met the legislative and judicial threshold requirements and is admitted to practice law, he or she is subject to the judiciary's inherent and exclusive authority to regulate the practice of law." *Fiedler,* 155 Wis. 2d at 103.

¶ 49. In the same way, we conclude that the power to remove a judicial assistant falls not within an area of shared powers, but within an area that historically has belonged exclusively to the judiciary. The legislature has set limits on employee hours and wages, set compensation levels, and has even established a posting procedure for appointment to judicial assistant positions,[20] but once a county employee has

---

[20] Once again, the presence of posting procedures in the Eau Claire County system is irrelevant for purposes of this opinion.

been appointed to the position of judicial assistant, the legislature has, until now, never enjoyed the power to remove that assistant without the judge's permission. To the contrary, history illustrates that judicial assistants have traditionally been subject to the judiciary's exclusive authority once appointed.[21]

¶ 50. Because we are left with an action that lies wholly within the judiciary's sphere of exclusive power,[22] we conclude that the bumping provision is

A position is posted only when a vacancy occurs in the judicial assistant position, and does not affect a judge's power to remove his or her assistant when there is no vacancy. We express no opinion on the constitutionality of the posting procedures that have previously been utilized by the County.

[21] This analysis is no different from that we recently employed in *Flynn v. Department of Administration*, 216 Wis. 2d 520, 544–52, 576 N.W.2d 245 (1998). After concluding that the subject matter of 1993 Wis. Act 16, § 9253 fell within both the legislature's and the judiciary's constitutionally-granted zones of authority, 216 Wis. 2d at 546–52, we concluded that the subject matter of the statute could not be within the judiciary's core zone of exclusive authority. *Id* at 551. Under the circumstances presented in *Flynn*, it was clear that the legislature had consistently acted in the area of appropriations and allocating government resources—a power so legislative in nature as to eliminate any question that the judiciary's exclusive powers might be involved.

[22] It is worth noting that other authorities have expressed similar opinions on the nature of the court's removal power. *See, e.g., Winnebago County v. Winnebago County Courthouse Employees Ass'n*, 196 Wis. 2d 733, 741, 741 n.4, 540 N.W.2d 204 (Ct. App. 1995) (decision "does not infringe upon the inherent power of a court to appoint or remove his or her staff"; "The court's right to remove members from his or her staff is not subject to collective bargaining."); *Kewaunee County v. WERC*, 141 Wis. 2d 347, 358, 415 N.W.2d 839 (Ct. App. 1987) ("[A]ny provision in a collective labor agreement between the union and

unconstitutional, and therefore void and unenforceable as it applies to judicial assistants. We also note that § 2.02 of the agreement provides for final and binding arbitration in the event of an alleged breach of the "bumping" provision. As a result, any attempt to enforce the provision would transfer the removal decision to an arbitrator. *See Iowa County v. Iowa County Courthouse/Social Servs. Employees, Local 413,* 166 Wis. 2d 614, 621, 480 N.W.2d 499 (1992). Because this directly conflicts with a circuit court judge's exclusive, inherent power to remove a judicial assistant, we also hold that the bumping provision is not subject to arbitration.

## V.

¶ 51. Having reached the conclusion that the bumping provision of the agreement impermissibly intrudes upon the judiciary's core zone of exclusive authority, it is important to set forth the foundation upon which the exclusive, inherent power to remove one's judicial assistant rests. Early in the history of this state we considered the invocation of inherent authority after the abrupt removal of a court employee

the county that hampers a court in its operation or interferes with its constitutional functions would be void."); ABA Standards Relating to Court Organization, *Non-Judicial Personnel of Court System,* § 1.42(b)(iii) ("Confidential employees include secretaries and law clerks and other persons whose duties require them to work on a personal and confidential basis with individual judges or judicial officers. . . .their appointment and *tenure* may be at the pleasure of the person for whom they work.") (emphasis added), cmt. at 99 (1990) ("Confidential personnel, including secretaries and law clerks. . .should be selected and *retained* at the choice of the individual for whom they perform their confidential functions.") (emphasis added).

by another branch officer. *See In re Janitor*, 35 Wis. 410 (1874). There, the state superintendent of public property served, without cause or notice to the justices, an order of removal upon the person serving as janitor of the supreme court. The superintendent then appointed another person, someone unknown to the supreme court justices, to serve as the new janitor. *See id.* at 410–11.

¶ 52. Up until the unilateral action of the superintendent, the supreme court janitor had always been removed by the justices, or "by and under their direction and with their consent and approval." *Id.* at 411. Moreover, the court's opinion demonstrated that the justices had developed a very positive working relationship with the janitor, and that they depended on him to perform many necessary functions. *See id.* at 412–16. Citing these customs, the *Janitor* court reasoned that "no removal should be ordered. . .without the advice and approbation of the justices." *Id.* at 416.

¶ 53. Following this reasoning, the court first considered statutory support for the superintendent's power to remove a janitor. One of those statutes provided that the superintendent was authorized "to employ such workmen in and about the capitol and public grounds as may be necessary to keep the same in a proper state of cleanliness. . . ." *In re Janitor*, 35 Wis. at 419–20. After concluding that the statute did not give the superintendent the powers asserted, *see id.* at 420–21, the court considered the division of powers between the three branches of government:

> As a power judicial and not executive or legislative in its nature, and one lodged in a co-ordinate branch of the government separated and independent in its sphere of action from the other branches, it seems to

be under the protection of the constitution, and therefore a power which cannot be taken from the court, and given to either the executive or legislative departments. . . .

*Id.* at 419. From this reasoning, the court concluded that the power to remove a court assistant was exclusive to the judiciary, and declared the superintendent's order of removal void. *See id.* at 421.[23]

¶ 54. In sum, the *Janitor* court held that the power to remove a court assistant was exclusive to the judiciary based in part on custom, and in part on the nature of the relationship between the justices and their janitor. In the same way, we conclude that the exclusive, inherent power of a circuit court judge to remove his or her judicial assistant springs from historical custom, as well as the unique relationship between judges and their immediate assistants.

---

[23] We note that the *Janitor* court did not engage in a modern-day separation of powers analysis to reach this conclusion. However, this is relevant only to highlight the age of the decision. Although it is not the most recent proclamation of law that this court has seen, *In re Janitor* is still considered one of this state's preeminent cases involving the exclusive, inherent powers of the judiciary, and has been routinely cited and discussed in our decisions involving inherent powers. *See, e.g., State ex rel. Friedrich v. Circuit Court for Dane County*, 192 Wis. 2d 1, 16–17 n.7, 531 N.W.2d 32 (1995); *State ex rel. Fiedler v. Wisconsin Senate*, 155 Wis. 2d 94, 100–101 n.1, 454 N.W.2d 770 (1990); *In re Complaint Against Grady*, 118 Wis. 2d 762, 778, 348 N.W.2d 559 (1984); *State ex rel. Moran v. Dep't of Admin.*, 103 Wis. 2d 311, 316, 307 N.W.2d 658 (1981); *State ex rel. Reynolds v. County Court of Kenosha County*, 11 Wis. 2d 560, 575–76, 105 N.W.2d 876 (1960); *Integration of Bar Case*, 244 Wis. 8, 46, 11 N.W.2d 604 (1943); *Stevenson v. Milwaukee County*, 140 Wis. 14, 18, 121 N.W. 654 (1909).

¶ 55. As stated, we find no historical support for the proposition that the legislative branch has ever possessed the power to remove judicial assistants without the judge's permission. To the contrary, *Janitor* strongly supports the conclusion that circuit court judges have exclusive power to protect their assistants from removal by another branch of government. At the same time, we conclude that a unique relationship exists between a judge and his or her judicial assistant. Judges share their labors and confidences with their assistants, rely upon their assistants' experience in managing an increasingly complex caseload, and entrust highly sensitive matters to their assistants' good judgment. As the *Janitor* court observed: "This principle of trust and confidence pervading every department of active life, both public and private, the law also recognizes and acts upon and will enforce and protect." 35 Wis. at 415.

¶ 56. The integral role played by judicial staff in the overall administration of justice is also reflected in Wisconsin Supreme Court Rule 70.39(11)(a) (1996),[24] which recommends that "[e]ach branch of circuit court should be staffed by one full-time judicial assistant." The Comment to the Rule explains the basis for that recommendation:

> The trial court system faces ever increasing caseloads and cases of ever increasing complexity. The judge today must take charge and aggressively manage his or her caseload. To do so the judge needs a full-time judicial assistant. This staff position will permit each judge to devote more of his or her

[24] SCR Chapter 70, entitled "Rules of Judicial Administration," governs court administration at the state and local levels. Judicial Council Committee's Note, 1979.

efforts to the primary judicial task—presiding over and judging lawsuits.

The position of judicial assistant should be in the state service. It will perform for the court the following work: type. . .; assist with calendar management. . .; hold scheduling conferences; assist with file and record acquisitions;. . .maintain judge's law library; act as receptionist in answering telephone, handling visitors and processing mail;. . .such other work as required by the court. *See*, sec. 758.19(h), Stats., "The director of state courts shall establish a description of the qualifications and duties of. . .a judicial assistant. . . ."

Judicial experience and expertise support the long-standing position of the Wisconsin Judicial Conference that this staff position is vital to a well-functioning court. Where judicial assistants now exist as part of the court staffing, caseloads are much more current and the oldest cases are disposed of with priority consideration.

The citizens of this state have a right to communicate directly with each judge's office during normal work day hours and get immediate answers to their questions and service on their requests without waiting for return calls from the judge, court reporters, or court clerk who at the time of the call are working in the courtroom. . . .Also, judges must be protected from ex parte communications by having their telephone calls screened by knowledgeable staff.[25]

---

[25] In October, 1993, the director of state courts issued a description of the duties of a judicial assistant which mirrors the position description contained in the above Comment. That description also contains a list of desired qualifications, including an ability to maintain a high level of confidentiality, discretion and integrity, an ability to communicate clearly, con-

¶ 57. Evidence of this unique relationship can be found in statutory law as well. As mentioned, each justice and court of appeals judge in the state of Wisconsin "may appoint and prescribe the duties of a secretary and a law clerk to assist the justice or judge in the performance of his or her duties." Wis. Stat. § 751.02. This statute also reveals the unique and confidential relationship that is inherent to a judge and his or her assistant. Although the legislature has chosen not to provide equivalent statutory authority to a circuit court judge, we see no reason why the relationship is any different at the circuit court level.

¶ 58. The reasons for protecting this relationship are arguably stronger at the circuit court than they are at the appellate level. Circuit court judges handle numerous court and jury trials, have dockets that are equally if not more crowded than those at the appellate level, and have more contact with the parties and the public in general. Under these circumstances, stripping a judge of his or her assistant without prior approval could impair the court's constitutional function more than it would at the appellate level.

¶ 59. In *Iowa County*, 166 Wis. 2d 614, this court faced a situation nearly identical to the present case. The county had argued that the circuit court judge's statutory authority to appoint a register in probate could be harmonized with a county board's power to establish working conditions pursuant to Wis. Stat. §§ 59.15(2)(c), the precursor to Wis. Stat. § 59.22(2)(c), and 111.70(1)(a). *See id.* at 621. Thus, the county argued, a provision of the labor agreement requiring the judge to post a vacancy in the register in probate position prior to appointment could coexist with the

cisely and tactfully, and an ability to exercise judgment and diplomacy.

statute granting a circuit court judge the power to appoint the register in probate. *See id.* at 618.

¶ 60. The court held that the collective bargaining agreement could not supersede the judge's statutory authority to appoint a register in probate. *See id.* at 621. Therefore, the provisions within the agreement which purported to regulate the judge's statutory authority were void and unenforceable. *See id.* In essence, the judge's statutory authority to appoint a register in probate was held to be exclusive.

¶ 61. Once again, the nature of the relationship between a judge and his or her judicial assistant does not change simply because there is no statutory authority to appoint an assistant at the circuit court level. Given our decision in *Iowa County*, we find it difficult to conclude that the appointment and removal of a register in probate is a power to be more "jealously guarded" by the judiciary than the power to remove assistants to the judges themselves. *See Friedrich*, 192 Wis. 2d at 14.

## VI.

¶ 62. Based on the customary practices in our state, and the unique relationship between a judge and his or her assistant, we conclude that the bumping provision cannot be harmonized with the circuit court judge's exclusive, inherent power to remove a judicial assistant. Because the provision obstructs the judiciary in its exclusive sphere, and thereby violates the separation of powers principles implied by our constitution, it is void, unenforceable, and not subject to arbitration.

¶ 63. The circuit court applied the proper standard of law, and reached a sustainable conclusion in

doing so. Therefore, the grant of declaratory relief for the judges was proper.

*By the Court.*—The order of the circuit court is affirmed.

¶ 64. JANINE P. GESKE, J. (*dissenting*). I dissent. The majority opinion errs in two important respects. First, the majority mistakenly concludes that the power to bump a circuit court employee, despite the terms of a collective bargaining agreement, is an exclusive power of the circuit court and not a power shared with the legislative branch. Second, the majority purports to state a narrow rule, but the true impact of this rule will be hard to contain.

¶ 65. Based upon the Wisconsin Constitution and our constitutional case law interpreting shared powers, I would conclude that a circuit court shares power with the legislative branch in the realm of court staff employment. This conclusion realistically embraces all circuit court staff, and does not artificially distinguish between judicial assistants and other court employees. Had the majority fully engaged in a shared powers analysis, it would have concluded that a circuit court has inherent constitutional authority to prevent a court staff member from being unilaterally removed and replaced, despite the terms of a collective bargaining agreement, if such removal and replacement unduly burdens or substantially interferes with the court's ability to conduct its constitutional functions and responsibilities. In this case the circuit court did not undertake the factually intensive shared powers analysis to determine whether replacing Ms. Melland with another qualified member of the bargaining unit would unduly burden or substantially interfere with

the circuit court of Eau Claire County.[1] I conclude that the circuit court applied the wrong standard of law and in doing so, failed to examine the relevant facts.

¶ 66. The majority begins its analysis by describing the inherent powers of the courts. There is no dispute that circuit court power over staff employment is not an express power conferred by the constitution, but derives from the inherent power of the courts. This court has previously described the nature of inherent powers possessed by each branch of government:

> In order that any human agency may accomplish its purposes, it is necessary that it possess power. The executive must have power to direct and control his business. The superintendent of the works must have power to direct his men. In order to accomplish the purposes for which they are created, courts must also possess powers. From time immemorial, certain powers have been conceded to courts because they are courts. Such powers have been conceded because without them they could neither maintain their dignity, transact their business, nor accomplish the purposes of their existence. These powers are called inherent powers.

*State v. Cannon*, 196 Wis. 534, 536, 221 N.W. 603 (1928). Inherent powers are those powers that the particular governmental branch requires to get its

---

[1] The circuit court failed even to consider whether the employment decision here was within the legislature's constitutional grant of authority presumably because the court concluded that Eau Claire County is not an equal branch of government with the state judiciary. The court concluded alternatively that even if the county had joint authority to appoint and remove, enforcement of the bumping provision would irreparably harm the courts and the public, and such enforcement would also diminish the inherent authority of the judges.

constitutional job done. In this case, the circuit court clearly has inherent power to assure that it has staff available to get its constitutional job done. The question is, does the circuit court have exclusive power[2] to say which of several qualified persons will aid the court in getting the job done?

¶ 67. The majority opinion offers a blurred analysis in answering that question. It correctly acknowledges that many inherent court powers are shared with one of the other branches of government. I agree with the majority that most governmental powers lie within the "great borderlands" of shared authority. Majority op. at 572. In that large realm, "it is neither possible nor practical to categorize governmental action as exclusively legislative, executive or judicial." Majority op. at 572, citing *State ex rel. Friedrich v. Circuit Court for Dane County*, 192 Wis. 2d 1, 14, 531 N.W.2d 32 (1995).

¶ 68. In contrast, inherent powers exclusive to courts are few in number.[3] Under our system of separation of powers, those finite exclusive powers should be "jealously guarded." *See Arneson v. Jezwinski*, 206 Wis. 2d 217, 228, 556 N.W.2d 721 (1996), citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) and *Friedrich*, 192 Wis. 2d at 14. Under our system the " 'subtle balancing of shared powers, coupled with *the*

---

[2] *See*, for example, the majority's historical analysis concluding that "the legislature has historically had only the limited power to *set the number* and salaries of assistants." Maj. op. at 586 (emphasis added).

[3] *See, e.g., State v. Cannon*, 196 Wis. 534, 221 N.W. 603 (1928) (power to admit and disbar attorneys); *State ex rel. Fiedler v. Wisconsin Senate*, 155 Wis. 2d 94, 454 N.W.2d 770 (1990) (ability to impose legal education requirement on attorneys desiring to be appointed as guardians ad litem).

*sparing demarcation of exclusive powers*, has enabled a deliberately unwieldy system of government to endure successfully for nearly 150 years.' " *Arneson,* 206 Wis. 2d at 228 (citation omitted) (emphasis added).

¶ 69. The majority neatly lays out the constitutional and statutory powers of the legislative and executive branches over county employees and then identifies the circuit court's constitutional and statutory powers in this arena. The majority concludes that "the subject matter of the (collective bargaining) agreement also falls within the judiciary's constitutionally-based sphere of inherent powers to 'protect itself against any action that would unreasonably curtail its powers or materially impair its efficiency,' " citing *In re Court Room.* Majority op. at 582. The majority continues, "[w]e are somewhat more persuaded by AFSCME's argument that the power to remove a judicial assistant is shared with the legislative branch, and not exclusive to the judiciary." Having brought us to the junction of shared powers, the majority hesitates. Why? The "general powers of the legislature provides imprecise guidance in this case." Majority op. at 583.

¶ 70. Unfortunately, imprecise guidance drives the majority's conclusion. Citing statutes from early this century that gave county boards the power to fix or change the number and salary of court employees, the majority deduces that the failure to assign removal power means that the county boards never had it. This is only wishful deduction. The power to change the number of employees includes the power to reduce that number. The power to remove is shared.

¶ 71. After concluding that the bumping provision impermissibly intrudes on an exclusive power of the court, *see* majority op. at 588–89, the majority could have rested. Instead, it engages in a lengthy discus-

sion, albeit dicta, of the *Janitor* decision and the "unique" relationship between a judge and his or her assistant. Had that discussion been placed elsewhere in the opinion, it would be no more persuasive. For instance, the majority essentially elevates a Supreme Court Rule and Comment to the status of evidence sufficient to prove the value or "uniqueness" of a particular judicial assistant. Neither of those documents has any bearing on whether the power to appoint and remove court employees is shared or exclusive. The Rule is only a recommendation for the creation of the judicial assistant position in courts that currently lack them. Those documents might have meaning on remand, but without specific factual determinations we are only left with speculation and rosy ideals.

¶ 72. Remand for fact-finding could have solidified other aspects of the majority's opinion. Again in dicta the majority follows *Janitor* to rely on a historical "custom"[4] of exclusive circuit court authority in employment decisions. While the historical perspective

---

[4]Under the laws of England, Blackstone identified seven requisites for every custom:

1. It must have been used so long, that the memory of man runneth not to the contrary.

2. It must have been continued. There must have been no interruption of the right, though there may have been of the possession.

3. It must have been peaceable and acquiesced in.

4. It must be reasonable, or at least no good reason can be assigned against it.

5. It ought to be certain.

6. It ought to be compulsory, although originally established by consent. It ought to be left to the option of every man, whether he will use it or not.

7. Customs must be consistent with each other, and must be construed strictly and submit to the king's prerogative.

can assist courts in identifying the core zone of exclusive circuit court function, *see Friedrich*, 192 Wis. 2d 14, vague references to "custom" are not determinative of this constitutional question.[5] If anything, the record here demonstrates a "custom" of shared authority. In Eau Claire County circuit court judges do not have exclusive decision-making authority in the employment realm. Eau Claire judges only have input in the employment of judicial assistants if the normal posting procedures under the collective bargaining agreement do not result in any interested and qualified candidates.[6]

---

*Blackstone's Commentaries on the Law* (Bernard C. Gavit ed., Washington Law Book 1941) 43–44.

[5] For criticism of reliance on custom in a property rights case, when the appellate court draws a fact-intensive conclusion without benefit of trial court analysis, *see Stevens v. City of Cannon Beach*, 510 U.S. 1207, 114 S. Ct. 1332, 1335 (1994) (mem.) denying cert. to 317 Or. 131, 854 P.2d 449 (1993), (Scalia, J. and O'Connor, J. dissenting):

> "The requirements (of custom) set forth by Blackstone included, *inter alia,* that the public right of access be exercised without interruption, and that the custom be obligatory, i.e., in the present context that it not be left to the option of each landowner whether he will recognize the public's right to go on the dry-sand area for recreational purposes. In *Thornton*, however, the Supreme Court of Oregon determined the historical existence of these fact-intensive criteria (as well as five others) in a discussion that took less than one full page of the Pacific Reporter. That is all the more remarkable a feat since the Supreme Court of Oregon was investigating these criteria *in the first instance*; the trial court had not rested its decision on the basis of custom and the State did not argue that theory to the Supreme Court."

[6] In this case I note that Ms. Melland is not even under the sole supervision of Judge Lenz. The record indicates that Ms. Melland also reports to the family court commissioner.

¶ 73. Dicta again, the majority cites *Iowa County v. Iowa County Courthouse*, 166 Wis. 2d 614, 480 N.W.2d 499 (1992), to assert that a court's inherent authority to appoint staff cannot be modified by a collective bargaining agreement. "In essence, the judge's statutory authority to appoint a register in probate was held to be exclusive." Majority op. at 594. However, the *Iowa County* court expressly declined to consider whether a circuit court judge's power to appoint a register in probate was an inherent constitutional power. Instead the opinion measured only the court's statutory powers against the terms of a collective bargaining agreement. *See* 166 Wis. 2d at 618. Consequently *Iowa County* adds nothing to a determination of whether that power was exclusive or shared; nor did it apply the undue burden/substantial interference test.[7]

---

[7] Other iterations of this test exist. In *State v. Holmes*, 106 Wis. 2d 31, 69, 315 N.W.2d 703 (1982), the court considered whether the operation of a judicial substitution statute "materially impair[ed] or practically defeat[ed]" the circuit court's exercise of jurisdiction so as to constitute a violation of the separation of powers doctrine. In *Integration of Bar Case*, 244 Wis. 8, 49, 11 N.W.2d 604, 12 N.W.2d 699 (1943), this court said that the separation of powers doctrine would be violated if the legislative conduct in regulating attorneys had "so far invaded the judicial field as to embarrass the court and impair its proper functioning." While each of these articulations bear some ambiguity, *see Holmes*, 106 Wis. 2d at 70, they are essentially interchangeable. Each seeks to measure the intrusion on the court's ability to conduct its constitutional functions and responsibilities. Each of these tests resembles the test adopted in *In re Court Room*, 148 Wis. 109, 134 N.W. 490 (1912), upon which the majority frequently relies to support its identification of an exclusive power: "actions that would *unreasonably curtail* their powers or *materially impair* their efficiency" in conducting judicial business". *See* majority op. at 578, 580, and 582.

¶ 74. The majority's own analysis, as described above, demonstrates that for court staff employment decisions it is neither possible nor practical to categorize that governmental action as exclusively legislative, executive, or judicial. *See Friedrich*, 192 Wis. 2d at 14; *see also In re Appointment of Revisor*, 141 Wis. 592, 598, 124 N.W. 670 (1910). The constitutional authority for legislative delegation of employment decisions to the counties has already been described quite fully by the majority, *see* majority op. at 574–76. The judiciary's inherent constitutional authority to perform its administrative functions is also demonstrated by the majority. Based on both lines of authority, I would conclude that regulation of employment of court staff falls within an area where legislative and judicial responsibilities overlap.

¶ 75. The next step in the analysis is whether that overlap unconstitutionally burdens or substantially interferes with the constitutional functions and responsibilities of the circuit court. *See State v. Unnamed Defendant*, 150 Wis. 2d 352, 360, 441 N.W.2d 696 (1989). The county argued that that there are no facts in this record to prove that enforcement of the bumping provision is unconstitutional. The county emphasized that the plaintiffs have not alleged an insufficient number of court staff and that because the collective bargaining agreement provides that bumping will occur only when there is a senior employee with the necessary qualifications, there is no undue burden or substantial interference with the function of the circuit court. The effect of the bumping, according to the county, is only a "temporary inconvenience" to the court. AFSCME asserts that because there is no loss of court efficiency, the bumping provision can be harmonized with the court's inherent power.

¶ 76. AFSCME's counsel also contended at oral argument that there is no difference in the operation of the circuit court when a permanent employee is bumped than when accommodations are made for personnel situations such as maternity leave or sick leave. AFSCME predicted that the likelihood that a circuit court judicial assistant would be bumped is much less than the likelihood that such an employee would become pregnant or leave for his or her own reasons. While AFSCME's assertions may be true they are not dispositive. The proper focus in a shared powers analysis is on neither the particular person who occupies the judicial assistant desk nor the frequency of potential personnel changes.

¶ 77. The proper focus is on the degree of the threat to the independence and efficient functioning of the judicial branch. Certainly no one asserts that the separation of powers doctrine is violated whenever a judicial employee decides to resign and seek other work. When another branch of government, albeit pursuant to a collective bargaining agreement, acts unilaterally to remove and replace a permanent, experienced circuit court staff member, that unilateral act may infringe on the inherent authority of the court to maintain its dignity, transact its business and accomplish the purposes of its existence. *See Breier v. E.C.*, 130 Wis. 2d 376, 386, 387 N.W.2d 72 (1986).

¶ 78. At oral argument counsel for the county agreed that all three circuit court judicial assistants could be bumped in the event of a county employee reduction in force. The *Janitor* court contemplated such a possibility. Were the court not empowered to prevent unilateral ouster of its employees, "[i]t would be impossible to foresee when or how often such changes would be made, and they might be rendered

intolerable by their very frequency." 35 Wis. at 417–18. Then again changes might not be intolerable, but only inconvenient. And therein lies the utility of the fact-specific undue burden/substantial interference test.

¶ 79. AFSCME contends that the *Holmes* decision prohibits the use of inherent judicial authority to avoid mere inconvenience. I do not read *Holmes* so broadly. *Holmes* is an example of the application of the undue burden/substantial interference test where the alleged unconstitutional interference is interruption of court routine.

¶ 80. The *Holmes* court addressed the effect of a judicial substitution statute upon the circuit court's constitutional exercise of jurisdiction. *See* 106 Wis. 2d at 52. The court acknowledged that while the statute resulted in a decrease in productive judicial time because of increased travel and an increase in judicial system operating costs to the state, the legislature must have decided that the inefficiencies, inconveniences and higher costs caused by peremptory substitution were an acceptable price for the benefits gained. *See id.* at 62.

¶ 81. The *Holmes* court upheld the substitution statute because its purpose was to ensure a fair trial before an impartial judge and the court could harmonize the legislative balancing with the need to avoid significant interference with administration of the court's work. *See id.* at 64, 66–67. *Holmes* also noted that similar statutes had been upheld in other jurisdictions despite the resulting burden on state courts. That increased burden included court calendaring and scheduling problems as well as interference with the normal and routine operation of the trial courts. *See id.* at 63–64. Ultimately the court recognized that even if substitution prevented a particular judge from hearing

the case, cases were nevertheless heard and resolved. *See id.* at 69–70. The court also observed that the legislature was making efforts to diminish the inefficiencies arising from the statute.

¶ 82. In concluding that peremptory substitution of judges did not rise to the level of substantial interference or undue burden on the constitutional functions and responsibilities of the court system, the *Holmes* court considered statistical evidence offered to show the frequency of requests for substitution. Substitution requests were filed in less than two percent of the total cases, and in less than five percent of the criminal cases. *See id.* at 70. The plaintiff judges were not able to prove that the volume of substitution requests materially impaired the operation of the judicial system. *See id.* at 71. Instead the judges were only able to offer common sense perceptions of delay and inefficiency. This court considered the potential for abuse of the substitution statute but concluded that such a criticism could not be gauged quantitatively. *See id.* at 73.

¶ 83. In this case, by contrast, the circuit court never undertook the factual weighing required by *Holmes*. Instead the circuit court, and now the majority, erred by concluding that the power to appoint judicial staff is not a shared power, but an exclusive power of the court. In my view the employment related power in this case is shared, but the current state of the record prevents this court from determining as a matter of law whether bumping Ms. Melland would substantially interfere with the constitutional functions and responsibilities of the Eau Claire County Circuit Court. Remand is therefore appropriate.

¶ 84. On remand, the circuit court could have analyzed the specific functions of the staff position, the actual responsibilities of the employee, and the impact

bumping would have on the constitutional functions and responsibilities of the circuit court. By examining these factors, the circuit court could have assessed whether the removal of Ms. Melland from her position as assistant to a judge and to a court commissioner would result in an undue burden or substantial interference with the functions and responsibilities of the Eau Claire County Circuit Court.

¶ 85. This court has held that "appointment to office, while generally called an executive function, cannot under our constitution be classed as exclusively a function of either of the three great departments," which may explain the majority's desire to cleave "bumping" from other employment related powers like appointment. *See Revisor*, 141 Wis. at 598.[8] Those other employment related powers, by virtue of the majority's rationale, are now inescapably added to the expanding "core functions" of the judicial branch. Case law upon which the majority relies address appointment and removal in tandem. *See, e.g.*, majority op. at 586 n.18 and 588–89 n.22. The majority also relies upon industry recommendations and treatises to reach its conclusion on exclusive power. These sources diverge from the majority's narrow approach because they would broadly reserve to the courts the rights to hire, administer, discipline, and supervise court staff. The majority cannot deny that its decision, relying in

---

[8] The holding of *In Re Appointment of Revisor*, 141 Wis. 592, 124 N.W. 670 (1910), is valid, despite the recognition in *Stevenson v. Milwaukee County*, 140 Wis. 14, 17, 121 N.W.654 (1909), that "the power to appoint necessary attendants upon the court is inherent in the court in order to enable it to properly perform the duties delegated to it by the constitution." *Stevenson* recognized an appointment power in the courts but did not determine whether this inherent power is exclusive or shared.

part on these sources, will have broad application to all circuit court employment decisions.

¶ 86. The majority's rationale also cannot be limited to an exclusive power over the employment of "judicial assistants." Its rationale, based on the "trust and confidence" involved in this "unique" relationship, will be applied to the employment of all circuit court staff.[9] Indeed it appears that the *Janitor* decision, cited by the majority at length, recognized the trust and confidence reposed in many government employees.

> "In all the affairs and transactions of life, even down to those which are strictly private and domestic in their nature, where the services or agency of others are necessary, the fiduciary or confidential relation, more or less clearly marked and defined, and constituting in part the consideration of the engagement and the value of the services, between employer and employed, or master and servant, is well known, and its existence recognized and respected. This principle of trust and confidence pervading every department of active life, both public and private, the law also recognizes and acts upon and will enforce and protect."

35 Wis. at 415.

---

[9] At oral argument counsel for the plaintiff judges broadly asserted that the power to appoint and remove court staff, including bailiffs, is an exclusive judicial function. Counsel did argue that other provisions of the collective bargaining agreement would still apply even if the court determined that the circuit court had exclusive authority over appointment and removal decisions. Along that line counsel agreed it was possible that this court would subsequently handle grievances brought by employees of the circuit court although circuit court judges could, as a matter of comity, submit grievances to collective bargaining.

609

¶ 87. I would declare that a circuit court has inherent authority to prevent its staff member from being unilaterally removed and replaced despite the terms of a collective bargaining agreement if that removal and replacement unduly burdens or substantially interferes with the court's constitutional functions and responsibilities. This conclusion is consistent with the inherent authority of the court recognized as far back as the *Janitor* case, but also considers the legislature's delegation of power to counties to enter into collective bargaining agreements with representatives of county employees, including those employed as court staff. My conclusion would not affect the validity of any collective bargaining agreement provisions that do not unduly burden or substantially interfere with a court's constitutional functions. *See Kewaunee County v. WERC*, 141 Wis. 2d 347, 358–59, 415 N.W.2d 839 (Ct. App. 1987).

¶ 88. I respectfully dissent. I am authorized to state that Chief Justice Shirley S. Abrahamson and Justice Ann Walsh Bradley join in this dissent.