No. 93–496. STEVENS ET AL. v. CITY OF CANNON BEACH ET AL. Sup. Ct. Ore. Certiorari denied.

JUSTICE SCALIA, with whom JUSTICE O'CONNOR joins, dissenting.

This is a suit by owners of a parcel of beachfront property against the city of Cannon Beach and the State of Oregon. Petitioners purchased the property in 1957. In 1989, they sought a building permit for construction of a seawall on the dry-sand portion of the property. When the permit was denied, they brought this inverse condemnation action against the city in the

Circuit Court of Clatsop County, alleging a taking in violation of the Fifth and Fourteenth Amendments. That court dismissed the complaint for failure to state a claim pursuant to Oregon Rule of Civil Procedure 21A(8), on the ground that under *State ex rel. Thornton* v. *Hay*, 254 Ore. 584, 462 P. 2d 671 (1969), petitioners never possessed the right to obstruct public access to the dry-sand portion of the property. App. to Pet. for Cert. C–22 to C–25. The Court of Appeals, 114 Ore. App. 457, 835 P. 2d 940 (1992), and then the Supreme Court of Oregon, 317 Ore. 131, 854 P. 2d 449 (1993), both relying on *Thornton*, affirmed. The landowners have petitioned this Court for writ of certiorari to the Supreme Court of Oregon. They allege an unconstitutional taking of property without just compensation, and a denial of due process of law.

In order to clarify the nature of the constitutional questions that the case presents, a brief sketch of Oregon case law involving beachfront property is necessary.

I

In 1969, the State of Oregon brought suit to enjoin owners of certain beachfront tourist facilities from constructing improvements on the "dry-sand" portion of their properties. The trial court granted an injunction. *State ex rel. Thornton* v. *Hay*, *supra*. In defending that judgment on appeal to the Supreme Court of Oregon, the State briefed and argued its case on the theory that by implied dedication or prescriptive easement the public had acquired the right to use the dry-sand area for recreational purposes, precluding development. The Supreme Court of Oregon found "a better legal basis" for affirming the decision and decided the case on an entirely different theory:

> "The most cogent basis for the decision in this case is the English doctrine of custom. Strictly construed, prescription applies only to the specific tract of land before the court, and doubtful prescription cases could fill the courts for years with tract-by-tract litigation. An established custom, on the other hand, can be proven with reference to a larger region. Ocean-front lands from the northern to the southern border of the state ought to be treated uniformly." *Id.*, at 595, 462 P. 2d, at 676.

The court set forth what it said were the seven elements of the doctrine of custom[1] and concluded that "[t]he custom of the people of Oregon to use the dry-sand area of the beaches for public recreational purposes meets every one of Blackstone's requisites." *Id.,* at 597, 462 P. 2d, at 677. The court affirmed the injunction, saying that "it takes from no man anything which he has had a legitimate reason to regard as exclusively his." *Id.,* at 599, 462 P. 2d, at 678. Thus, *Thornton* declared as the customary law of Oregon the proposition that the public enjoys a right of recreational use of all dry-sand beach, which denies property owners development rights.

Or so it seemed until 1989. That year, the Supreme Court of Oregon revisited the issue of dry-sand beach in the case of *McDonald v. Halvorson,* 308 Ore. 340, 780 P. 2d 714 (1989). There, the beachfront property owners who were plaintiffs sought a judicial declaration that their property included a portion of dry-sand area adjacent to a cove of the Pacific Ocean. With such a declaration in place, they hoped to gain access (under *Thornton,* as members of the public) to the remaining dry-sand area of the cove lying on property to which the defendants held record title. The State intervened to assert the public's right (under the doctrine of custom) to use the dry-sand area of the cove, and to enjoin defendants from interfering with that right. The Supreme Court of Oregon held that the public had no right to recreational use of the dry-sand portions of the cove beach. 308 Ore., at 360, 780 P. 2d, at 724. *McDonald* noted what it called inconsistencies in *Thornton,* 308 Ore., at 358–359, 780 P. 2d, at 723, and resolved them by stating that "nothing in *[Thornton]* fairly can be read to have established beyond dispute a public claim by virtue of 'custom' to the right to recreational use of the entire Oregon coast." *Id.,* at 359, 780 P. 2d, at 724. "[T]here may also be [dry-sand] areas," the court said, "to which the doctrine of custom is

---

[1] The Supreme Court of Oregon described the English doctrine of custom as applying to land used in a certain manner (1) so long that the mind runneth not to the contrary; (2) without interruption; (3) peaceably; (4) where the public use has been appropriate to the land and the usages of the community; (5) where the boundary is certain; (6) where the custom is obligatory (not left up to individual landowners as to whether they will recognize the public's right to access); and (7) where the custom is not repugnant to or inconsistent with other customs or laws.

not applicable." *Ibid.*[2] The court noted that "[t]here [was] no testimony in this record showing customary use of the narrow beach on the bank of the cove. . . . The doctrine of custom announced in *[Thornton]* simply does not apply to this controversy. The public has no right to recreational use of the [dry-sand beach area of the cove] because there is no factual predicate for application of the doctrine." *Id.,* at 360, 780 P. 2d, at 724.

With *McDonald* now the leading case interpreting the law of custom, petitioners here brought their takings challenge in the Oregon state trial court. As recited above, that court dismissed for failure to state a claim upon which relief could be granted, saying that "*[Thornton]* teaches us that ocean front owners cannot enclose or develop the dry sand beach area so as to exclude the public therefrom. . . . [B]ecause of the public's ancient and continued use of the dry sand area on the Oregon coast . . . its future use thereof cannot be curtailed or limited." App. to Pet. for Cert. C–24. The trial court did not cite *McDonald,* and its peremptory dismissal prevented petitioners from doing what *McDonald* clearly contemplated their doing: providing the factual predicate for their challenge through testimony of customary use showing that their property is one of those areas "to which the doctrine of custom [was] not applicable." *McDonald, supra,* at 359, 780 P. 2d, at 724. Moreover, when petitioners attempted to introduce such factual material on appeal they were rebuffed on the ground that appeal was confined to the purely legal question whether the complaint stated a claim under Oregon law. App. to Pet. for Cert. I–197 to I–198 (Tr., Mar. 3, 1993); see also *id.,* at I–185 to I–190.

In its decision here, the Supreme Court of Oregon quoted portions of *Thornton's* sweeping language appearing to declare the law of custom for all the Oregon shore. But it then read *Thornton* (which also originated in a dispute over property in Cannon Beach) to have said that the "historic public use *of the dry sand area of Cannon Beach* met [Blackstone's] requirements." 317

---

[2] While narrowing *Thornton* in this respect, *McDonald* seemingly expanded it in another: "'Dry-sand area' as used in *[Thornton]* can apply equally to gravel beaches, beaches strewn with or even made up of boulders, and other areas adjacent to the foreshore which, like the beach in *[Thornton],* have long been used for recreational purposes by the general public." 308 Ore., at 359, 780 P. 2d, at 724.

Ore., at 140, 854 P. 2d, at 454 (emphasis added).[3] The court then framed the issue as the continuing validity of *Thornton* in light of *Lucas* v. *South Carolina Coastal Council*, 505 U. S. 1003 (1992). The court quoted our opinion in *Lucas:* " 'Any limitation so severe [as to prohibit all economically beneficial use of land] cannot be newly legislated or decreed (without compensation), but must inhere in the title itself, in the restrictions that background principles *of the State's law of property* and nuisance already place upon land ownership.' " 317 Ore., at 142, 854 P. 2d, at 456 (quoting *Lucas, supra,* at 1029, (emphasis added by the Oregon court). The court held that the doctrine of custom was just such a background principle of Oregon property law, and that petitioners never had the property interests that they claim were taken by respondents' decisions and regulations. 317 Ore., at 143, 854 P. 2d, at 456. It then affirmed the dismissal.

## II

As a general matter, the Constitution leaves the law of real property to the States. But just as a State may not deny rights protected under the Federal Constitution through pretextual procedural rulings, see *NAACP* v. *Alabama ex rel. Patterson,* 357 U. S. 449, 455–458 (1958), neither may it do so by invoking nonexistent rules of state substantive law. Our opinion in *Lucas,* for example, would be a nullity if anything that a state court chooses to denominate "background law"—regardless of whether it is really such—could eliminate property rights. "[A] State cannot be permitted to defeat the constitutional prohibition against taking property without due process of law by the simple device of as-

---

[3] This reading of *Thornton* is in my view unsupportable. *Thornton* did not limit itself to "the dry sand area of Cannon Beach." On the contrary, *Thornton* includes the following statements: "Ocean-front lands from the northern to the southern border of the state ought to be treated uniformly." 254 Ore., at 595, 462 P. 2d, at 676. "This case deals solely with the dry-sand area along the Pacific shore . . . ." *Ibid.* "The custom of the people of Oregon to use the dry-sand area of the beaches for public recreational purposes meets every one of Blackstone's requisites." *Id.,* at 597, 462 P. 2d, at 677. "[T]he custom of the inhabitants of Oregon and of visitors in the state to use the dry sand as a public recreation area is so notorious that notice of the custom . . . must be presumed." *Id.,* at 598, 462 P. 2d, at 678. The passage in which *Thornton* actually applies Blackstone's seven-factor test contains not a single mention of the city of Cannon Beach. *Id.,* at 595–597, 462 P. 2d, at 677.

serting retroactively that the property it has taken never existed at all." *Hughes* v. *Washington,* 389 U. S. 290, 296–297 (1967) (Stewart, J., concurring). No more by judicial decree than by legislative fiat may a State transform private property into public property without compensation. *Webb's Fabulous Pharmacies, Inc.* v. *Beckwith,* 449 U. S. 155, 164 (1980). See also *Lucas, supra,* at 1031. Since opening private property to public use constitutes a taking, see *Nollan* v. *California Coastal Comm'n,* 483 U. S. 825, 831 (1987); *Kaiser Aetna* v. *United States,* 444 U. S. 164, 178 (1979), if it cannot fairly be said that an Oregon doctrine of custom deprived Cannon Beach property owners of their rights to exclude others from the dry sand, then the decision now before us has effected an uncompensated taking.

To say that this case raises a serious Fifth Amendment takings issue is an understatement. The issue is serious in the sense that it involves a holding of questionable constitutionality; and it is serious in the sense that the landgrab (if there is one) may run the entire length of the Oregon coast.[4] It is by no means clear that the facts—either as to the entire Oregon coast, or as to the small segment at issue here—meet the requirements for the English doctrine of custom. The requirements set forth by Blackstone included, *inter alia,* that the public right of access be exercised without interruption, and that the custom be obligatory, *i. e.,* in the present context that it not be left to the option of each landowner whether he will recognize the public's right to go on the dry-sand area for recreational purposes. In *Thornton,* however, the Supreme Court of Oregon determined the historical existence of these fact-intensive criteria (as well as five others) in a discussion that took less than one full page of the Pacific Reporter. That is all the more remarkable a feat since the Supreme Court of Oregon was investigating these criteria *in the first instance;* the trial court had not rested its decision on the basis of custom and the State did not argue that theory to the Supreme Court.[5]

---

[4] From *Thornton* to *McDonald* to the decision below, the Supreme Court of Oregon's vacillations on the scope of the doctrine of custom make it difficult to say how much of the coast is covered. They also reinforce a sense that the court is creating the doctrine rather than describing it.

[5] In *Thornton,* the Supreme Court of Oregon appears to have misread Blackstone in applying the law of custom to the entire Oregon coast. "[C]ustoms . . . affect only the inhabitants of particular districts." 1 W. Black-

As I have described, petitioners' takings claim rests upon the assertion *both* that the new-found "doctrine of custom" is a fiction, *and* that if it exists the facts do not support its application to their property. The validity of both those assertions turns upon the facts regarding public entry—but that is no obstacle to our review. "In cases in which there is a claim of denial of rights under the Federal Constitution, this Court is not bound by the conclusions of lower courts, but will reexamine the evidentiary basis on which those conclusions are founded." *Niemotko* v. *Maryland,* 340 U. S. 268, 271 (1951); see also *Broad River Power Co.* v. *South Carolina ex rel. Daniel,* 281 U. S. 537, 540 (1930); *Demorest* v. *City Bank Farmers Trust Co.,* 321 U. S. 36, 41–43 (1944). What *is* an obstacle to our review, however, is the fact that neither in the present case (because it was decided on motion to dismiss) nor even in *Thornton* itself (because the doctrine of custom was first injected into the case at the Supreme Court level) was any record concerning the facts compiled. It is beyond our power—unless we take the extraordinary step of appointing a master to conduct factual inquiries—to evaluate petitioners' takings claim.

Petitioners' due process claim, however, is another matter. Respondents' brief in opposition does not respond to that claim on its merits, but asserts that petitioners' claim has been "raise[d] for the first time in their petition for certiorari." Brief in Opposition 25. I think not. Petitioners argued before the Court of Appeals of Oregon that since they were not parties to *Thornton,* their rights to dry-sand beach could not have been determined by that decision because they "have not had their day in court." App. to Pet. for Cert. G–90 to G–92, and n. 3. In their brief to

stone, Commentaries *74. *McDonald* seems to suggest that a custom may extend to all property "similarly situated" in terms of its physical characteristics, *i. e.,* all dry-sand beach abutting the ocean. 308 Ore., at 359, 780 P. 2d, at 724. That does not appear to comport with Blackstone's requirement that the custom affect "inhabitants of particular districts." See *Post* v. *Pearsall,* 22 Wend. 425, 440 (N. Y. Ct. Err. 1839); see also *Fitch* v. *Rawling,* 2 Bl. H. 394, 398–399, 126 Eng. Rep. 614, 616–617 (C. P. 1795) ("Customs must in their nature be confined to individuals of a particular description [and not to all inhabitants of England], and what is common to all mankind, can never be claimed as a custom"); *Sherborn* v. *Bostock,* Fitzg. 51, 94 Eng. Rep. 648, 649 (K. B. 1729) ("the custom . . . being general, and such a one as may extend to every subject, whether a citizen or a stranger, is void").

the Supreme Court of Oregon, they contended that application of *Thornton* to other property owners presented a "serious proble[m] of violation of the . . . due process clause of the Fifth Amendment." App. to Pet. for Cert. H–155. I believe that petitioners have sufficiently preserved their due process claim, and believe further that the claim is a serious one. Petitioners, who owned this property at the time *Thornton* was decided, were not parties to that litigation. Particularly in light of the utter absence of record support for the crucial factual determinations in that case, whether the Oregon Supreme Court chooses to treat it as having established a "custom" applicable to Cannon Beach alone, or one applicable to all "dry-sand" beach in the State, petitioners must be afforded an opportunity to make out their constitutional claim by demonstrating that the asserted custom is pretextual. If we were to find for petitioners on this point, we would not only set right a procedural injustice, but would hasten the clarification of Oregon substantive law that casts a shifting shadow upon federal constitutional rights the length of the State.

I would grant the petition for certiorari with regard to the due process claim.