On motion for summary determination of appealability filed July 26, 1999;
resubmitted en banc January 13, motion allowed; appeal dismissed
March 1, 2000

David P. BUSH
and Susanne Bush,
*Respondents,*

*v.*

PARAGON PROPERTY, INC.,
an Oregon corporation,
Garth C. Everhart and Tad Everhart,
*Appellants.*

(98-11-07834; CA A107143)

997 P2d 882

Paul Eberhardt and Lawrence Schuckman of Smith, Freed, Heald & Chock, P.C., filed a motion on behalf of appellants to stay the trial court proceedings pending appeal. R. Daniel Lindahl, Paul S. Bierly and Bullivant Houser Bailey filed a supplemental memorandum on behalf of appellants.

Patricia Ferrell-French filed motions on behalf of respondents for summary determination of appealability, to dismiss, and for attorney fees and costs and filed a supplemental memorandum.

Before Deits, Chief Judge, and Edmonds, De Muniz, Landau, Haselton, Armstrong, Linder, Wollheim, Kistler and Brewer, Judges.

ARMSTRONG, J.

Wollheim, J., concurring.

## ARMSTRONG, J.

This case involves a dispute between plaintiffs, the buyers of a new home, and defendants, the builders and sellers, concerning the condition of the home. Plaintiffs seek damages for defects in the home on various theories; in the alternative, they seek to rescind the purchase. In the trial court, defendants moved to compel arbitration under provisions of the parties' earnest money agreement and to abate the judicial proceedings pending that arbitration. Defendants appeal from the trial court's order denying those motions. Plaintiffs have moved in this court for a summary determination of the appealability of that order, ORS 19.235(3), and to dismiss the appeal. We grant the motions and dismiss the appeal.[1]

The state statutes that govern our jurisdiction do not give us jurisdiction of an appeal from an interlocutory order denying a motion to compel arbitration. ORS 19.205; *Berger Farms v. First Interstate Bank*, 148 Or App 33, 38, 939 P2d 64 (1997), *rev'd on other grounds* 330 Or 16 (2000). However, we held in *Berger Farms* that section 16 of the Federal Arbitration Act (the FAA), 9 USC § 16, requires a state to provide an interlocutory appeal under the FAA from an order denying a motion to compel arbitration.[2] The foundation for that holding was our conclusion that denying an interlocutory appeal would undermine the goals and policies of the FAA. The denial would permit the party opposing arbitration to avoid the effect of an otherwise valid arbitration clause and would force the party seeking arbitration into potentially lengthy and costly litigation. That, we noted, would undermine the basic objective of the FAA, which is to ensure that valid arbitration clauses are enforced according to their terms. Citing *Felder v. Casey*, 487 US 131, 153, 108 S Ct 2302, 101 L Ed 2d 123 (1988), we held that, when a state procedural law is

---

[1] Defendants also moved to stay the trial court proceedings pending a decision on their appeal. We denied their motion on the ground that the trial court had lost jurisdiction of the case when they served and filed their notice of appeal, *see* ORS 19.270(1), so their motion for a stay was moot.

[2] We followed that holding in *Wilbur-Ellis Co. v. Hawkins*, 155 Or App 554, 964 P2d 291 (1998), without further analysis and without considering more recent United States Supreme Court cases.

inconsistent with the objectives of a federal law, the state law must give way to the vindication of a federal right when that right is asserted in state court. *Berger*, 148 Or App at 37-39.

In *Felder*, a state statute required the plaintiff to notify the public body of his tort claim within 120 days of the injury and to bring a lawsuit within a limited time after the defendant rejected the claim. A failure to comply with the statute provided the public body and its employees with a complete defense. The United States Supreme Court held that that statute unconstitutionally burdened the plaintiff's right to bring an action under 42 USC § 1983 in state court. The goals of the state statute were incompatible with the purposes of the federal act, and the application of the notice requirement would lead to a different outcome in the case in state court from that in federal court. *Felder*, 487 US at 143-45, 151. The Court noted that, although federal law takes state court procedures as it finds them, it does so only insofar as the state courts employ rules that do not impose unnecessary burdens on federal rights. *Id.* at 150. The essential point of *Felder* is that states may not create additional defenses, whether substantive or procedural, to a claim based on a federal right.

In *Berger Farms*, we relied on *Felder* as holding that, when a state procedural law is inconsistent in purpose and effect with the objectives of federal law, both principles of federalism and the Supremacy Clause itself require that the state law give way to vindication of the federal right when that right is asserted in state court. 148 Or App at 39 (citing *Felder*, 487 US at 153). We believed that *Felder* showed that the United States Supreme Court would treat a denial of an interlocutory appeal of an order denying a motion to compel arbitration under the FAA as denying the basic objective of the FAA in the same way that the notice of claim statute denied the plaintiff in *Felder* the basic rights that Congress had granted in 42 USC § 1983.

Since our decision in *Berger Farms*, the United States Supreme Court has decided several cases involving the authority of Congress to impose obligations on states. As a result, we now question whether our analysis in *Berger Farms* was correct.

One month after we decided *Berger Farms,* the Supreme Court refused to require a state to provide an interlocutory appeal in a situation where such an appeal would have been available under federal law. *Johnson v. Fankell,* 520 US 911, 117 S Ct 1800, 138 L Ed 2d 108 (1997). The issue in *Johnson* was whether Idaho state officials who were defendants in an action brought in state court under 42 USC § 1983 had a right to appeal a trial court order denying their motion that sought summary judgment on the ground of qualified immunity. The Idaho Supreme Court, applying its normal appellate rules, held that there was no state right to an interlocutory appeal, and it rejected the officials' claim that they had a federal right to such an appeal.

On certiorari, the United States Supreme Court unanimously held that federal law did not supersede a state's neutrally applied procedural rules. It recognized that the officials would have had a right to an interlocutory appeal under federal procedural rules if the plaintiff had filed the case in federal court, but it held that that did not require state courts to provide the same procedural opportunities. It noted that a requirement that a state court treat federal law as the law of the land does not necessarily require the state to create a court competent to hear the case in which the federal claim is presented. It also noted that the interest that an interlocutory appeal would protect is the interest of state officials to have the issue of qualified immunity decided at an early stage of the case. Whether to provide appellate review of that issue at an early stage rather than at the conclusion of the case, the court held, is a judgment about how best to balance competing state interests rather than an interference with federal interests. *Johnson,* 520 US at 918-21.

There was no suggestion in *Johnson* that the application of the Idaho procedural rule would produce a different outcome in the case; if the qualified immunity defense were meritorious, then the final result of the case would be the same whether or not the officials were successful on summary judgment. That fact, the Court stated, distinguished *Johnson* from *Felder,* in which the application of the state notice of claim statute could lead to a different ultimate result in state court from that in federal court. The Court held that the state officials did not have a federal right to prevail in advance of trial if their qualified immunity defense

were meritorious. What mattered was that they would be able to prevail on that defense before the case concluded. The Court noted that the federal right to an interlocutory appeal did not come from section 1983 itself but from 28 USC § 1291, a general appellate procedural statute. Finally, the court held that, when preemption of state law is the issue, fundamental principles of federalism play an important role. Respect for those principles is at its apex when the claim is "that federal law requires a State to undertake something as fundamental as restructuring the operation of its courts." In a footnote, the court emphasized that it has "made it quite clear that it is a matter for each State to decide how to structure its judicial system." 520 US at 921-23 and n 13.

*Johnson* shows that the United States Supreme Court does not see the federal interests on which we relied in *Berger Farms* to be as significant as we believed. There are, of course, some obvious distinctions between an action under section 1983 and a motion to compel arbitration under the FAA. First, there is no particular reason that it is necessary to decide the issue of qualified immunity before trial in order to achieve the purpose of section 1983. The primary purpose of section 1983 is to vindicate federally guaranteed rights; whether the defendant prevails on a defense before or after trial does not affect that purpose. In contrast, the very purpose of the FAA is to avoid a trial when the parties have agreed to arbitration. To require the party seeking arbitration to go through an entire trial before being able to have an appellate determination of its right to arbitrate may well defeat that purpose, whatever the outcome of the appeal. Second, the federal right to an interlocutory appeal in a section 1983 action arises from a separate discretionary statute that applies to litigation in federal court. Again, in contrast, the federal right to an interlocutory appeal of an order denying a motion to compel arbitration is in the FAA itself and is absolute. By giving that special status to the right to an interlocutory appeal, Congress indicated that such an appeal is an important part of its overall purpose of ensuring the enforceability and effectiveness of agreements to arbitrate.

On the other hand, section 1983 is based on Congress' authority to enforce the Fourteenth Amendment, while the FAA is based on its Article I power over interstate commerce. In its recent cases, the Court has held that Congress

has considerably greater authority over the states when it acts under section 5 of the Fourteenth Amendment than when it acts under Article I.

■     *Johnson*, thus, undercuts our decision in *Berger Farms*, because it suggests that an asserted federal right to an interlocutory appeal does not override a neutral state procedural rule that denies such an appeal. We are not prepared to say that by itself *Johnson* changed the law so decisively that *Berger Farms* has lost its precedential value in that regard. However, reading *Johnson* in light of several more recent decisions leads us to conclude that *Johnson* now has constitutional significance, with the result that Congress is without power under Article I to require a state to modify its normal judicial procedures, at least when those procedures do not absolutely defeat the congressional purpose.

In two of the recent cases, the Court held that Congress does not have the authority under Article I to abrogate a state's sovereign immunity from private suits on claims that are based on federal law. In *College Sav. Bank v. Florida Prepaid*, 527 US 666, 119 S Ct 2219, 144 L Ed 2d 605 (1999), the Court held that a state agency was not subject to an action for an alleged trademark violation, despite a statute that expressly subjected states to such actions. In *Florida Prepaid v. College Sav. Bank*, 527 US 627, 119 S Ct 2199, 144 L Ed 2d 575 (1999), it held that a state is not subject to an action for patent infringement, again despite a statute that clearly subjected states to such actions. In both cases it relied on its decision in *Seminole Tribe of Fla. v. Florida*, 517 US 44, 116 S Ct 1114, 134 L Ed 2d 252 (1996), as holding that Congress has no Article I power to abrogate a state's sovereign immunity; it then took an extremely expansive view of that immunity in rejecting arguments that other constitutional provisions legitimized Congress' actions.

Probably more significant than the Florida cases for our purposes is *Alden v. Maine*, 527 US 706, 119 S Ct 2240, 144 L Ed 2d 636 (1999), in which the Court held that Congress could not abrogate a state's immunity from suit in the state's own courts for violations of the Fair Labor Standards Act, a statute that, like the FAA, is based on Congress' authority under the Commerce Clause of Article I. In doing

so, the Court emphasized the independent sovereignty that states retain in our federal system. "Although the Constitution grants broad powers to Congress, our federalism requires that Congress treat the States in a manner consistent with their status as residuary sovereigns and joint participants in the governance of the Nation." *Alden*, 527 US at 748, 119 S Ct at 2263, 144 L Ed 2d at 674. It also pointed out that a congressional power to authorize suits against nonconsenting states in their own courts might well be even more offensive to state sovereignty than a power to authorize suits in a federal forum. "[T]he immunity of a sovereign in its own courts has always been understood to be within the sole control of the sovereign itself." *Alden*, 527 US at 749, 119 S Ct at 2264, 144 L Ed 2d at 675. The Court continued:

> "When the Federal Government asserts authority over a State's most fundamental political processes, it strikes at the heart of the political accountability so essential to our liberty and republican form of government. * * *
>
> "* * * A State is entitled to order the processes of its own governance, assigning to the political branches, rather than the courts, the responsibility for directing the payment of debts. * * *
>
> "* * * * *
>
> "* * * It would be an unprecedented step * * * to infer from the fact that Congress may declare federal law binding and enforceable in state courts the further principle that Congress' authority to pursue federal objectives through the state judiciaries exceeds not only its power to press other branches of the State into its service but even its control over the federal courts themselves."

*Alden*, 527 US at 751-53, 119 S Ct at 2265, 144 L Ed 2d at 676-77.

■      The net result of these cases is that Congress cannot, in the exercise of an Article I power, interfere with the authority of states to determine the structure of their own political systems. That inhibition necessarily applies to the states' determination of what jurisdiction to assign to their courts. The principle of state sovereignty embodied in the Florida cases and *Alden* prohibits Congress from imposing, in the exercise of its Article I powers, certain obligations on the

states, particularly those that alter choices lawfully made by them about the structure or function of their governmental institutions. In the Florida cases, the Court held that state sovereign immunity prevents Congress from imposing the obligations at issue in any circumstance. In *Alden*, it held that state sovereign immunity prevents Congress from requiring state courts, at the behest of affected individuals, to enforce federally created rights against a state. It is true that the cases do not expressly discuss whether Congress has authority under Article I to restructure state court procedures, for the simple reason that that issue did not directly arise in them. However, the Court's strong emphasis on a state's independent sovereignty and its reluctance to permit Congress to require state courts to act contrary to the state's sovereign interests indicates that it would now consider the result in *Johnson* to be required by principles of state sovereignty, not just by Congress' failure clearly to preempt state procedures. Thus, *Johnson*'s result is now, by extension, constitutionally compelled.

■ We conclude, therefore, that intervening case law requires us to revisit and overrule *Berger Farms*. Whether or not Congress intended to require state courts to provide interlocutory appellate review of orders denying arbitration when state law does not permit them to conduct that review, it is constitutionally prohibited from imposing that requirement.[3]

■ The Oregon Legislature created our court and defined its jurisdiction by statute. *See* ORS 2.510 to ORS 2.590; ORS 19.205. That grant of jurisdiction does not include

---

[3] We invited the parties to file supplemental memoranda on the validity of *Berger Farms* in light of subsequent Supreme Court cases. In their response, defendants contend that *Alden* has no bearing on *Berger Farms*, because *Alden* dealt with sovereign immunity while *Berger Farms* and the cases on which it relied dealt with federal preemption. That contention fails to recognize that *Alden* necessarily established a principle about the limits of federal preemption. Although the Court recognized in *Alden* that the federal Fair Labor Standards Act preempts state law on the payment of overtime pay to state employees, that federal policy choice could not preempt the state's choice about whether to waive sovereign immunity and thereby authorize its courts to be used to enforce the federal policy against it. There is no doubt that the FAA preempts contrary state policy on the enforcement of arbitration agreements. Under *Alden*, that does not mean that the FAA can override the Oregon Legislature's decision about our jurisdiction over interlocutory appeals.

jurisdiction over an interlocutory appeal from an order denying enforcement of a written arbitration agreement.[4] ORS 19.205; *Berger Farms*, 148 Or App at 38. Under *Johnson* and *Alden*, Congress lacks the power under Article I so to alter

---

[4] The statute governing our jurisdiction does not discriminate between appeals involving the enforcement of arbitration agreements and those involving the enforcement of any other agreement. Further, nothing suggests that the legislature crafted the statute to undercut or affect in any way the enforceability of arbitration agreements. *Cf.* ORS 36.300 to ORS 36.365 (state counterpart to FAA also promotes enforcement of arbitration agreements). Consequently, there is no basis to conclude that our jurisdictional statute was designed to frustrate Congress' goals in enacting the FAA, which were to "foreclose state legislative attempts to undercut the enforceability of arbitration agreements," *Southland Corp. v. Keating*, 465 US 1, 16, 104 S Ct 852, 79 L Ed 2d 1 (1984) (footnote omitted), "to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate," *Dean Witter Reynolds Inc. v. Byrd*, 470 US 213, 219-20, 105 S Ct 1238, 84 L Ed 2d 158 (1985) (footnote omitted), and to place arbitration agreements on " 'the same footing as other contracts,' " *Scherk v. Alberto-Culver Co.*, 417 US 506, 511, 94 S Ct 2449, 41 L Ed 2d 270 (1974) (citations omitted). We need not decide, therefore, whether, notwithstanding the limits imposed by federalism on Congress' authority to interfere with state decisions on the jurisdiction and procedures of their courts, section 16 of the FAA would preempt a state statute that limited the jurisdiction of a state appellate court in order to frustrate the goals of the FAA. *Cf. Alden*, 527 US at 758, 119 S Ct at 2268, 144 L Ed 2d at 680 (notes that evidence did not support finding that state had manipulated "its immunity in a systematic fashion to discriminate against federal causes of action").

[5] We recognize that early Congresses enacted statutes that gave state courts authority and, arguably, the obligation to perform a variety of functions. *See, e.g.*, Act of March 26, 1790, ch 3, § 1, 1 Stat 103 (required state courts to record citizenship applications); Act of July 20, 1790, ch 29, § 3, 1 Stat 132 (required state courts to resolve controversies over the seaworthiness of vessels). Critically, however, no case of which we are aware has held that Congress has the power under Article I to require state courts to exercise jurisdiction that they have not been given by state law. We believe that the Supreme Court's discussion in the *Second Employers' Liability Cases*, 223 US 1, 56-57, 32 S Ct 169, 56 L Ed 327 (1912), of Congress' power to create causes of action that state courts must adjudicate exemplifies the distinction:

"[W]e deem it well to observe that there is not here involved any attempt by Congress to enlarge or regulate the jurisdiction of state courts or to control or affect their modes of procedure, but only a question of the duty of such a court, when its ordinary jurisdiction as prescribed by local laws is appropriate to the occasion and is invoked in conformity with those laws, to take cognizance of an action to enforce a right of civil recovery arising under the act of Congress and susceptible of adjudication according to the prevailing rules of procedure. We say 'when its ordinary jurisdiction as prescribed by local laws is appropriate to the occasion,' because we are advised * * * that the Superior Courts of [Connecticut] are courts of general jurisdiction, are empowered to take cognizance of actions to recover for personal injuries and for death, and are accustomed to exercise that jurisdiction, not only in cases where the right of action arose under the laws of that State, but also in cases where it arose in another State, under its laws, and in circumstances in which the laws of Connecticut give no right of recovery, as where the causal negligence was that of a fellow-servant."

our jurisdiction.[5] Thus, our state jurisdictional statute controls, and under it defendants have no right to appeal from the order at issue. We therefore dismiss the appeal.[6]

Motion for summary determination of appealability allowed; appeal dismissed.

**WOLLHEIM, J.,** concurring.

I concur with the majority opinion only in the result that it reaches. Because the issue before us can be resolved by applying Oregon law in accordance with the Federal Arbitration Act (FAA), 9 USC §§ 1-16, there is no need to reach the constitutional issues raised by the majority opinion nor is there a need to overrule *Berger Farms v. First Interstate*

---

Here, in contrast, our jurisdiction does *not* include jurisdiction over appeals from interlocutory orders denying enforcement of written arbitration agreements. *See also Printz v. United States*, 521 US 898, 905-08, 117 S Ct 2365, 138 L Ed 2d 914 (1997) (discussing relationship of early congressional enactments to authority of Congress to require state courts to enforce federal law).

[6] Relying on *Volt Info. Sciences v. Leland Stanford Jr. U.*, 489 US 468, 109 S Ct 1248, 103 L Ed 2d 488 (1989), the concurrence contends that we can decide this case on the ground that the FAA does not apply to the parties' contract, so we need not reach the issue whether *Berger Farms* should be overruled. 165 Or App at 712-15. The concurrence is mistaken. *Volt* involved a contract in which the parties had specified that the contract would be governed by California law. A California court held that that provision meant that the parties had chosen California arbitration law over conflicting provisions of the FAA. The Supreme Court affirmed, reasoning that the function of the FAA is to make written arbitration agreements enforceable according to the terms of the parties' agreement. If the parties choose to agree to arbitrate in accordance with a particular law, then the FAA is not intended to preempt that choice. *Volt*, 489 US at 475-79. Here, in contrast with *Volt*, the contract does *not* have a choice-of-law provision that makes Oregon law applicable to it. Nevertheless, the concurrence applies normal choice-of-law principles to conclude that Oregon law applies to the contract and, hence, that Oregon arbitration law prevails over conflicting provisions of the FAA. If that reasoning were sound, then it would mean that the FAA would apply only when parties expressly make it applicable to their contracts, because choice-of-law principles normally will operate to make some state's law apply to a contract. *Volt* does not suggest that the FAA is so limited in its application. In fact, the concurrence's reasoning would stand the Supremacy Clause on its head, because it would give state law precedence over federal law unless the parties choose otherwise.

The concurrence tries to bolster its analysis by noting that the contract refers to Oregon law in several of its provisions, which suggests, to the concurrence, that the parties intended Oregon law to apply to the contract. However, the contract also refers to federal law, which, by parallel reasoning, presumably suggests that they intended federal law to apply as well. In contrast with the conclusion reached by the California court in *Volt*, there simply is no basis to conclude that the parties chose Oregon over federal arbitration law. Consequently, *Volt* does not provide a basis on which to avoid confronting the continued validity of *Berger Farms*.

*Bank,* 148 Or App 33, 939 P2d 64 (1997), *rev allowed* 327 Or 192 (1998).

The principal purpose of the FAA is to ensure that arbitration agreements are enforced by courts in the same manner as other contracts. *Allied-Bruce Terminex Cos. v. Dobson,* 513 US 265, 270, 115 S Ct 834, 130 L Ed 2d 753 (1995). By enacting the FAA, Congress declared a national policy favoring arbitration that ensures that those who have contracted to arbitrate will be permitted to do so. *Southland Corp. v. Keating,* 465 US 1, 10-14, 104 S Ct 852, 79 L Ed 2d 1 (1984). The FAA prohibits state courts from applying state statutes that invalidate arbitration agreements. *Allied-Bruce,* 513 US at 272. However, the FAA does not reflect a congressional intent to occupy the entire field of arbitration nor does it contain an express preemption provision. *Volt Info. Sciences v. Leland Stanford Jr. U.,* 489 US 468, 477, 109 S Ct 1248, 103 L Ed 2d 488 (1989). Thus, the question becomes whether the application of state statutes that are invoked by an arbitration agreement undermines the goals and policies of the FAA. *Id.* It is important to note that "[t]here is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Id.* at 476; *see also Prima Paint v. Flood & Conklin,* 388 US 395, 403-04, 87 S Ct 1801, 18 L Ed 2d 1270 (1967) (discussing enforceability of arbitration procedures selected by the parties to a contract). In recognition of the importance of effectuating the intent of the parties, the United States Supreme Court has held that when the parties to a contract agree to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA. *Volt,* 489 US at 479. The Court stated that, even if the result of following state procedural rules is that arbitration is stayed when the FAA would have otherwise permitted arbitration to go forward, those rules should not be preempted if the parties intended for them to govern arbitration. *Id.*

The issue before us is whether the FAA or Oregon law governs the resolution of this contract dispute. Unlike the parties in *Berger,* the parties in this instance did not

explicitly state that arbitration was to be conducted in accordance with the FAA. 148 Or App at 35. Furthermore, because the contract here does not contain a choice-of-law clause, we must determine what law generally governs the contract so we can, in turn, determine what law governs the arbitration clause. So long as those laws do not undermine the purposes of the FAA, they will apply to the case at hand.

In contract actions, Oregon generally applies the law of the state that has the most significant relationship to the parties and to the transaction. *Citizens First Bank v. Intercontinental Express,* 77 Or App 655, 657, 713 P2d 1097 (1986). In this instance, because both of the parties are located in Oregon, the contract was signed in Oregon, and the property purchased is also located in Oregon, Oregon law governs this contract. That the parties intended Oregon law to apply to the contract is also evident from the terms of the contract itself. Oregon laws, agencies and institutions are mentioned at least seven times in the sale agreement and receipt for earnest money. In addition, the contract's arbitration clause expressly invokes ORCP 68 to govern the award of attorney fees to the prevailing party in arbitration. Lastly, the contract's small claims provision makes specific reference to Oregon's courts. I therefore conclude that the parties to the contract intended to arbitrate contract disputes in accordance with the laws of Oregon.

Oregon's arbitration laws are similar, but not identical, to the provisions of the FAA. ORS 36.305, like section 2 of the FAA, requires that written arbitration agreements be enforced.[1] Likewise, ORS 36.315 mirrors section 3 of the FAA and, on a determination by the presiding judge that the dispute is subject to arbitration, authorizes the judge to stay litigation so that arbitration may be conducted in accordance with the terms of an arbitration agreement.[2] However,

---

[1] The relevant portion of ORS 36.305 states:

"A provision in any written contract to settle by arbitration a controversy thereafter arising out of such contract * * * shall * * * be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

[2] The relevant portion of ORS 36.315 states:

"[A]ny judge of a circuit court, upon being satisfied that the issue is referable to arbitration, shall abate the action, suit or proceeding so that arbitration may be had in accordance with the terms of the agreement."

Oregon's arbitration statutes diverge from the provisions of the FAA in those instances when a judge determines that a dispute is not subject to the arbitration clause contained in a contract. Section 16 of the FAA permits an interlocutory appeal for any order refusing a motion to stay litigation brought under section 3 of the FAA. Oregon statutes do not permit interlocutory appeals in such instances. Proceedings under Oregon arbitration statutes are special proceedings and appeals from trial court orders denying motions to stay are governed by ORS 19.205. *See Berger Farms*, 148 Or App at 38 (discussing appeals of special statutory proceedings).[3] That statute states that appeals of special statutory proceedings will proceed "in the same manner and with like effect" as other cases from circuit court. In *Dept. of Rev. v. Universal Foods Corp.*, 311 Or 537, 544, 815 P2d 1237 (1991), the Supreme Court held that the statute "requires a final and complete determination of the matter in the special proceeding before an appeal is appropriate." Since denial of a motion to stay made pursuant to ORS 36.315 will not "determine[ ] the action or suit so as to prevent a judgment or decree therein," ORS 19.205(2)(a), a trial court order denying a stay is not immediately appealable under Oregon procedural law. *Berger Farms*, 148 Or App at 38.

A denial does not mean that an appellant will not be able to appeal the trial court's arbitrability decision under Oregon law, it simply means that an appellant will have to wait until there is a final judgment before doing so. As we have previously observed, "The object that Congress sought to achieve [with the FAA] is simply that the aggrieved party have a right to appeal at some time." *Marr v. Smith Barney, Harris Upham & Co., Inc.*, 116 Or App 517, 524, 842 P2d 801 (1992), *rev den* 315 Or 442 (1993). The distinction between federal and Oregon law is that the FAA permits an immediate appeal of a trial court's arbitrability determination whereas Oregon law postpones judicial review of such determinations to a later point in time.

---

The Oregon statute uses the term "abate" whereas the FAA uses the term "stay." For the purposes of clarity, I will use the term "stay" throughout the opinion.

[3] *Berger Farms* applies *former* ORS 19.010 (1995), *renumbered as* ORS 19.205 (1997). For purposes of clarity, I use ORS 19.205 throughout this opinion.

Because the parties before us have invoked Oregon substantive and procedural law to govern their contract disputes, application of state procedural laws here is consistent with the purpose and goals of the FAA and is not subject to preemption. *Volt*, 489 US at 479.[4] Therefore, we do not have jurisdiction to hear an interlocutory appeal. Appeal of the trial court's denial of a motion to stay must await a final judgment.

Appellant argues that *Berger Farms* requires that we hear this interlocutory appeal to the trial court's order denying the motion to stay. *Berger Farms* is significantly distinguishable from the case before us and its reasoning is not applicable in this instance. The arbitration clause in *Berger Farms* specifically invoked the FAA. 148 Or App at 35. There, the parties intended for federal substantive and procedural laws to apply to arbitration of disputes. Here, the parties have not expressly invoked the FAA and I have concluded that the parties intended for Oregon substantive and procedural laws to apply to the agreement. The analysis of state procedural law conducted when the parties have intended *federal law* to resolve contract disputes, as in *Berger Farms*, will not necessarily be similar to, or relevant to, the analysis

---

[4] The application of state arbitration laws in *Volt* is analogous to the application here. In *Volt*, a private university and a construction firm entered into a construction contract that included an arbitration clause in their agreement. The contract also contained a choice-of-law clause that stated the contract "shall be governed by the law of the place where the [p]roject is located"—California. A dispute arose between the university and the firm. The university brought an action against the firm and two other companies that were not parties to the contract and, thus, not subject to the arbitration clause. The firm moved to compel arbitration. The university moved to stay arbitration pursuant to a California procedural statute that permitted a stay of arbitration pending resolution of related litigation where there was a possibility of conflicting rulings on common issues of law or fact. The motion was granted. The United States Supreme Court held that, because the arbitration clause specifically invoked California's laws, application of the stay did not undermine the goals and policies of the FAA even though arbitration would be delayed until the conclusion of litigation. The fact that the application of the FAA's procedures would have permitted the arbitration to proceed more quickly than it would under the application of state procedures did not necessarily warrant preemption by the FAA because the parties intended for the state statutes to apply and because the state statutes did not invalidate the arbitration agreement. Similarly, here, the mere fact that appeal of the trial court's arbitrability decision is delayed until the conclusion of litigation does not warrant preemption of the Oregon procedural statutes that the parties intended to govern arbitration.

of the same state procedural law when the parties have intended *state law* to resolve contract disputes.

The *Berger Farms* analysis of ORS 19.205, and the conclusion that its application undermined the basic objective of the FAA, was conducted in the context of the application of federal law. When federal laws are applied in state courts, the court is bound to apply federal substantive law but is free to apply state procedural law so long as those procedures do not undermine the goals and policies of the federal substantive law. 148 Or App at 37. In *Berger Farms*, the state procedural laws conflicted with the interlocutory appeal provisions of the FAA that the parties had intended would govern the arbitration of disputes. Therefore, in *Berger Farms*, we properly held that the federal provisions preempted the state provisions. In the present case, the parties intended that state procedures be followed in arbitrating disputes. Preemption of ORS 19.205 by section 16 of the FAA would be contrary to the intent of the parties and the terms of the agreement. As the United States Supreme Court noted in *Volt*, even if the result of applying state procedural rules is that an arbitration does not proceed when the FAA would otherwise have permitted it to go forward, when the parties to a contract agree to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement does not undermine the goals and policies of the FAA. 489 US at 479. Our ruling in *Berger Farms* is distinguishable on these points and is not applicable in this instance. There is no need to overrule *Berger Farms*.

Further, there is no need to reach the federalism concerns raised by the majority opinion. Because the FAA permits us to resolve this action by applying state statutes, the preemption issue is not even before this court. Only when it is absolutely necessary to the determination of an issue before us should we decide a case on constitutional grounds. *State v. House*, 299 Or 78, 81, 698 P2d 951 (1985). That is particularly true when, as here, we are interpreting the constitutionality of a federal statute. We generally follow the principle that we do not decide constitutional issues when there is an adequate statutory basis for a decision. *Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 564, 687 P2d

785 (1984). We should follow that principle here. Furthermore, I do not believe we have the appropriate factual setting requiring a decision based on constitutional grounds. *See Stevens v. City of Cannon Beach*, 317 Or 131, 147, 854 P2d 449, *cert den* 114 S Ct 1332 (1993) (constitutionality of statutes ought not be decided except in actual factual setting that makes such decision necessary). Therefore, I would not reach the constitutional issues addressed by the majority opinion.

For the aforementioned reasons, I believe we do not have jurisdiction to hear an interlocutory appeal in this instance. I therefore concur with the majority's decision to grant the motion for summary determination of appealability and dismiss the appeal.

Edmonds, J., joins in this concurrence.